Guillermo PEREZ, Jr., individually and on behalf of all others similarly situated, Plaintiffs,

v.

The PERSONNEL BOARD OF the CITY OF CHICAGO, Warren H. Bacon, Addie L. Wyatt, Carl Shier and Frederick Novy, Members, Jesse Hoskins, Commissioner of Personnel of the Department of Personnel, Leroy Martin and Fred Rice, Superintendent, Chicago Police Department, and the City of Chicago, a municipal corporation, Defendants.

No. 87 C 10545.

United States District Court, N.D. Illinois, E.D.

July 7, 1988.

Robert J. Biswurm, Lyle I. Myers, Kurt D. Hyzy, Biswurm & Myers, Ltd., Chicago, Ill., for plaintiffs.

Michael K. Fridkin, Daniel Nestor, Judson H. Miner, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Guillermo Perez brings this class action challenging the constitutionali-

ty as applied of the City of Chicago's ("City") personnel policy that all applicants for career civil service positions must be residents of the City at the time of application for examination. Perez moves for class certification under Fed.R.Civ.P. 23, and defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated herein, we deny both motions.

### I. Factual Background [1]

Perez has been a resident of Houston, Texas, since 1980. On June 19, 1985, he applied to the City to take the August 17 written examination that initiates the extensive screening process for positions in the Chicago police department. Perez stated in his application that he resided in Chicago. The City allowed him to sit for the examination, and he performed sufficiently well to advance to the next phase in the application process. On October 17, 1986, Perez submitted a more thorough personal history questionnaire in which he admitted that, while he had resided in Chicago from about 1968 until 1980, he currently resided in Houston, Texas. He explained that he had always intended to apply for a position with the Chicago police department, but the unavailability of such positions forced him to pursue his law enforcement career elsewhere. Perez completed the final battery of written examinations on December 8, 1986. Within weeks, defendant Jesse E. Hoskins, Commissioner of Personnel, notified Perez that he had satisfactorily completed every portion of the screening process and was therefore eligible for a police officer position.

The City apparently did not realize that Perez was not a Chicago resident until several months after he submitted the questionnaire and was placed on the eligibility list. The Chicago Municipal Code provides that "All officers and employees in the career service of the city shall be actual residents of the city." § 25–30. The Department of Personnel imposes a

---

1. Plaintiffs' complaint sets forth the following allegations which we take as true for purposes of this motion to dismiss. *Meriwether v. Faulk*ner, 821 F.2d 408, 410 (7th Cir.), *cert. denied,* ——U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

more stringent residence requirement: "As of the date of application [for examination for Police Officer Grade P1], an applicant must be an actual resident of the City of Chicago. Proof of residency will be required at the *time of application.*" Pursuant to this policy, Hoskins informed Perez on May 15, 1987, that he was disqualified "from being appointed to the Chicago Police Department [because he was] not an actual resident of the City of Chicago when [he] applied for and took the examination for police officer in 1985." After the Department denied Perez's final appeal, he filed this action on behalf of himself and all others similarly situated against the City and various departments and officials.

Perez seeks a declaratory judgment that the Department of Personnel residence requirement is unconstitutional because it impermissibly burdens applicants' right to interstate travel by establishing without sufficient justification a "de facto 20 month pre-employment residence requirement." Perez additionally seeks reinstatement on the police officer eligibility role and a permanent injunction barring enforcement of the policy. Defendants moved to dismiss the complaint, contending that the policy is a "bona fide residence requirement" that passes constitutional muster, and, accordingly, there is no set of facts alleged in the complaint upon which Perez can prevail. Recognizing that a decision on the motion to dismiss constitutes a decision on the merits, we ordered the parties first to brief the question of class certification pursuant to Rule 23. *Bieneman v. City of Chicago,* 838 F.2d 962, 963–64 (7th Cir.1988). We now address both motions.

## II. Class Certification

■ Fed.R.Civ.P. 23(a) sets forth the prerequisites to a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the represent-

ative parties will fairly and adequately protect the interests of the class.

The plaintiff must prove that the case is appropriately a class action. Failure on the part of the plaintiff to satisfy any of the requirements of Rule 23 is fatal to class certification. *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). We conclude that Perez has failed to establish numerosity under 23(a)(1) and typicality under 23(a)(3) and accordingly deny class certification.

Perez describes the class on whose behalf this action is sought to be maintained as follows:

All those United States Citizens who are residents of a State in the United States other than Illinois whose fundamental right to interstate travel is interferred with and who are presently eligible for testing, training, and assignment to police department districts, who will be denied such testing, training and assignment and who are denied the right to exercise their fundamental right to interstate travel by the Department of Personnel of the City of Chicago's requirement that all applicants be actual residents of the City of Chicago as of the date the applicant applies to take the written examination.

and asserts more generally that the outcome of this action will affect "all United States citizens between the ages of 21 and 34, inclusive, who are not residents of the State of Illinois."

■ We agree with the defendants that this action can only affect non-Illinois residents who both seek positions as Chicago police officers and cannot satisfy the Department of Personnel residence policy. It is therefore incumbent upon Perez under the numerosity requirement of Rule 23(a)(1) to identify some individuals who fall within this category, and that their number is so great as to render joinder impracticable. Perez has failed to do so. He has not identified any other person who has been denied employment as a Chicago police officer on account of the residence policy and has not demonstrated any likelihood that such an individual or class of

individuals will exist in the future. At most, Perez's class assertion is a conclusory allegation that there must be other class members. Such speculation cannot support class certification. *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

Perez is correct that there is no particular number which satisfies the numerosity prerequisite. However, a plaintiff cannot satisfy the numerosity requirement without showing that some other person besides himself is similarly situated. *Mazus v. Department of Transportation*, 629 F.2d 870, 876 (3rd Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). As the Court stated in the *Rex v. Owens*, 585 F.2d 432 (10th Cir.1978):

> there must be presented some evidence of established ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement. Id. at 436

In sum, we will not presume numerosity of class membership or, for that matter, any membership in the class on the mere theoretical possibility that such members exist. Indeed, Perez' failure to identify any class members renders impossible a determination as to whether their joinder is impracticable.

Perez also fails to establish under Rule 23(a)(3) that his claim is typical of those in the putative class. Typicality is met, irrespective of varying fact patterns underlying each class member's claim, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ..." *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D.Ill.1980). As the Seventh Circuit stated in *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225,232 (7th Cir.1983), "subsection a(3) [of Rule 23] primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." Perez alleges that the residence policy promulgated a "de facto 20 month pre-employment residency requirement." The length of this waiting period as applied to Perez is critical. Perez has not presented in his motion for class certification any example or evidence of the imposition of a waiting period of similar duration upon any other non-resident applicants. In view of his failure to show the existence of any similarly situated individuals with similar causes of action, Perez has failed to meet the 23(a)(3) typicality requirement, and on that basis as well, class certification is denied.

### III. The Motion to Dismiss

Having decided class certification, we now address the merits of this action in the context of the motion to dismiss. The parties dispute whether Perez has satisfactorily pled that the Department of Personnel residence policy infringes his constitutional right to interstate travel. Before assessing the adequacy of the complaint, we set forth the framework of analysis that the Supreme Court has constructed for claims of deprivation of the right to interstate travel.

### A. The Constitutional Right to Interstate Travel

The right to interstate travel lacks any precise textual source but is considered fundamental to our federal system:

> This Court long ago recognized that the nature of our federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.

*Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969).[2] As early as its decision in *Shapiro*, the Supreme Court has recognized that resi-

---

**2.** The Court has never felt compelled to identify the actual constitutional provision under which it analyzes claims of deprivation of this right. *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 2320, 90 L.Ed.2d 899 (1986); *Zobel v. Williams*, 457 U.S. 55, 67, 71, 102 S.Ct. 2309, 2316, 2318, 72 L.Ed.2d 672 (1982) (Brennan, J., concurring); *United States v. Guest*, 383 U.S. 745, 758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966).

dence requirements by their very nature implicate the right to interstate travel. Thus, the government must justify any statute, regulation or policy that denies an individual a benefit or privilege on account of the individual's status as either a non-resident or new resident. To aid in the analysis, the Supreme Court classifies residence requirements as "bona fide" or "durational," viewing the latter as potentially a greater burden on the right to travel and accordingly warranting closer scrutiny.

A bona fide residence requirement restricts the receipt of certain benefits, services or privileges to current residents and is constitutional if it can withstand "minimum scrutiny," that is, the government can prove that the requirement is rationally related to a legitimate policy goal. The Supreme Court has invariably upheld bona fide residence requirements:

> [A] bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents.

*Martinez v. Bynum,* 461 U.S. 321, 328, 103 S.Ct. 1838, 1842, 75 L.Ed.2d 879 (1983) (upholding a statute denying tuition benefits to minors living apart from their parents and present in a school district primarily to attend free public schools). *See also McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (upholding requirement that those employed by the city retain residence in that city throughout their employment); *Andre v. Board of Trustees,* 561 F.2d 48 (7th Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978) (upholding requirement that employees establish residency within a certain time period after beginning employment with the municipality).

Durational residence requirements, on the other hand, differentiate between new and old residents, requiring an individual to reside in a jurisdiction for a specified period of time before becoming eligible for a benefit or service. Durational requirements in effect penalize during the qualifying period those individuals who have recently traveled to and established residence in the state or municipality. *Dunn v. Blumstein,* 405 U.S. 330, 334, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). If the benefit or privilege is so substantial that its denial to new residents in a jurisdiction deters individuals from taking up residence in that jurisdiction, the residence requirement significantly impacts interstate travel and runs afoul of the Constitution if the government cannot prove that the requirement is necessary to meet a compelling state interest (strict scrutiny).

The Supreme Court has yet to define the precise characteristics of a benefit or privilege that render it sufficiently substantial such that its denial to new residents triggers strict scrutiny. Certainly, if the benefit or privilege denied to new residents is a fundamental constitutional right, the burden on interstate travel is sufficient to warrant strict scrutiny. *See, e.g., Dunn v. Blumstein,* (invalidating one-year waiting period for eligibility to vote); *Johnson v. Opelousas,* 658 F.2d 1065 (5th Cir.1981) (striking down restrictions on travel that infringe a juvenile's associational rights).

If the benefit or privilege at issue is not fundamental, however, the effect that the temporary denial of the benefit or privilege to a new resident has on interstate travel is determined on a case-by-case basis. In the first decision to strike down a durational residence requirement, the Supreme Court found welfare assistance to be substantial and accordingly held that its denial to new residents warrants strict scrutiny. *Shapiro v. Thompson,* 394 U.S. at 627, 89 S.Ct. at 1327. In *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 256–57, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1974), the Court held a durational residence requirement for free medical care to indigents an unconstitutional burden on interstate travel since "medical care 'is as much a basic necessity of life' to an indigent as welfare assistance." The Court noted in *Maricopa County* that "[t]he amount of impact required to give rise to the compelling-state-interest test [has not been] made clear." In contrast to these decisions, the court deemed tuition benefits insubstantial in

this context, and accordingly found that a waiting period for new residents to receive tuition benefits need only satisfy minimum scrutiny to pass constitutional muster. *Sturgis v. Washington,* 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464, *summarily aff'g.,* 368 F.Supp. 38 (W.D.Wash.1973); *Maricopa County,* 415 U.S. at 259, 94 S.Ct. at 1082.[3]

### B. *Perez's Complaint*

The Department of Personnel policy requires an individual to establish residence in the City at the time of application for a career police officer position which, in Perez's case, amounted to a year and a half before employment in that position could begin. Perez characterizes this requirement as a durational residence requirement for career civil service employment whereas defendants label it a bona fide residence requirement for civil service applicants. We view the policy as falling somewhere between these characterizations, and rather than attempting to force the personnel policy as a whole into this classification scheme, we conclude that the policy sufficiently burdened Perez's right to interstate travel to warrant strict scrutiny.

At the outset, we note that the Supreme Court has referred to but not actually ruled on requirements of residence at the time of application. For example, in *Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970), in which the Court upheld a bona fide residence requirement for voting, the Court stated that "Maryland may, of course, require that all applicants for the vote actually fulfill the requirements of bona fide residence." *Id.* at 421, 90 S.Ct. at 1754, *quoting Carrington v. Rash,* 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965). In *McCarthy,* the Court used similar language, upon which defendants primarily rely in their motion:

Neither in [our decisions in *Shapiro, Dunn,* and *Maricopa County* ], nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident at the time of his application. (Emphasis added.)

424 U.S. at 646, 96 S.Ct. at 1155. In neither of these cases did the Court actually hold that an application residence requirement separate and distinct from a residence requirement during actual receipt of the benefit passes constitutional muster.

At most, the Court has acknowledged that the government must have some time to investigate and verify an individual's residence status before dispensing a benefit or granting a privilege constitutionally restricted to residents. In most states, residence constitutes not only physical presence but an intent to remain within the jurisdiction: "Although the meaning may vary according to context, "residence" generally requires both physical presence and an intention to remain". *Martinez,* 461 U.S. at 330, 103 S.Ct. at 1843. Such is the case in Illinois. *Sestric v. Clark,* 765 F.2d 655, 662 (7th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986) ("Although the word 'resident' is a chameleon ... the usual meaning in Illinois law as in other states' law is 'domiciliary.' "); *Miller v. Police Board, City of Chicago,* 38 Ill.App.3d 894, 349 N.E.2d 544, 548 (1st Dist.1976). Thus, the government is usually justified in requiring some time for investigation in order to establish the existence of the proper intent.

The Supreme Court has never indicated the amount of time appropriate and reasonable for this residence verification. We do not doubt that the Court, if faced with the issue, would not condone a state's lengthening the application period on a pretext of residence verification to such a length of time as to effectively establish a durational

**3.** *See also Niles v. University Interscholastic League,* 715 F.2d 1027 (5th Cir.1983), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984) (finding that the privilege of participating in interscholastic high school sports is not so basic that its denial to new residents burdens the right to travel); *Hawaii Boating Asso. v. Water Transp. Facilities Div.,* 651 F.2d 661 (9th Cir.1981) (upholding durational requirement for preferential rates for mooring privileges in recreational boat harbors); *Hankins v. Hawaii,* 639 F.Supp. 1552 (D. Hawaii 1986) (upholding durational requirement for gubernatorial candidacy); *Coolman v. Robinson,* 452 F.Supp. 1324 (N.D.Ind.1978) (license to sell alcoholic beverages).

residence requirement. We need not establish here the boundary between a legitimate application residence requirement for purposes of investigating an individual's compliance with a bona fide residence requirement and a durational residence requirement that triggers strict scrutiny. In this case, Perez has alleged sufficient facts from which we can conclude that the City's application residence requirement amounts to a durational requirement.

The Department of Personnel policy requires an individual who is not a resident of the City to establish residence prior to applying for a law enforcement position. As with all residence requirements generally, the applicant must demonstrate an intent to make Chicago his permanent residence. *Fagiano v. Police Board, City of Chicago*, 98 Ill.2d 277, 456 N.E.2d 27 (Ill. 1983). Thus, an individual from another state must terminate residence in that state to establish residence in Chicago in order to apply for a position as police officer. In Perez's case, this amounted to shedding his status as a resident of Houston, Texas, and waiting for a period of twenty-three months during which there was no guarantee that he would successfully complete the application process and obtain the benefit of employment with the City. As is clear from how Perez's application was handled by the City, taking the examination and successfully completing all portions of the screening process is insufficient to demonstrate an intent to retain residence in Chicago at the time of receipt of the benefit. We fail to see how Perez could be expected to establish residence in Chicago during this period and maintain his position with the Houston police force;[4] and, indeed, we are hard-pressed to imagine a more effective deterrent to Perez's right to interstate travel than this twenty-three-month period of uncertainty.

Defendants argue that even if the policy can be considered a durational residence requirement, the benefit of which Perez was deprived is insubstantial. We disagree. Certainly, there is no fundamental constitutional right to employment as a municipal police officer. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). However, courts have indicated that a jurisdiction's denial of government employment to new residents may deter non-residents seeking such employment from moving to that jurisdiction. The Supreme Court wrote in *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986), that

> While the benefit sought here [bonus points that aid in obtaining civil service employment] may not rise to the same level of importance as the necessities of life and the right to vote, it is *unquestionably* substantial. *Id.* [106 S.Ct.] at 2324. (Emphasis added).[5]

*See also Nehring v. Ariyoshi*, 443 F.Supp. 228 (D. Hawaii 1977) (striking down a one-year residence requirement for public employment since "the denial of the opportunity to apply for public employment does have a sufficient enought impact upon the right to travel to require that the statute be justified by a compelling state interest"). The burden is especially apparent in

**4.** Defendants seek to soften the residence requirement by contending that Perez could have established permanent residence in Chicago and temporarily returned to Houston, the "prior residence," while the screening process progressed. Defendants have presented no authority to support the implicit proposition of law that residence can be established even if the individual keeps a similar civil service position with equally demanding qualifications in a distant city such as Houston, Texas. Further, and more significant, the Supreme Court has never differentiated residence requirements in this way when the individual must demonstrate an intent to remain. A durational residence requirement warrants strict scrutiny, however easy or difficult the task of establishing residence in the particular jurisdiction.

**5.** The defendants seek to downplay the import of this quote by noting the split in the *Soto–Lopez* court and, specifically, that only four justices joined in that opinion. We do not purport to elevate this language to the holding of the Court. We rely on this language only to lend further credence to our holding that the denial of employment as a police officer to new residents sufficiently deters the right to interstate travel to warrant strict scrutiny. It is instructive that the two concurring justices did not reject the specific posposition set forth in the quoted language.

this case. An individual who chooses a career in law enforcement severely limits his employment options as his training and experience qualify him only for a specific type of work. Denying an individual such a position may effectively deny that person a livelihood, and an individual would, in all likelihood, not travel to a jurisdiction in which he could not pursue his livelihood for over twenty months. We therefore conclude that employment as a municipal police officer is sufficiently substantial that its denial to new residents for a period of over twenty months deters the individual from exercising his right to interstate travel and accordingly warrants strict scrutiny.[6]

## IV. Conclusion

Perez has failed to demonstrate numerosity and typicality in his class allegation. Accordingly, the motion for class certification is denied, and all class allegations are stricken pursuant to Fed.R.Civ.P. 23(d)(4). Perez has satisfactorily pled that the application residence requirement as applied to him sufficiently burdened his right to interstate travel as to warrant strict scrutiny. Accordingly, Perez has stated a claim upon which relief can be granted, and the motion to dismiss is denied. Defendants are to answer the complaint on or before July 29, 1988. It is so ordered.

---

6. Defendants additionally attempt to establish that the residence requirement satisfies strict scrutiny. A motion to dismiss is not the appropriate avenue for defendants to set forth this defense to Perez's claim. To survive a motion to dismiss, Perez need only set forth sufficient facts to establish that strict scrutiny is warranted. It is for the defendants to raise in their answer the defense that the policy is necessary to serve a compelling state interest and to prove it on summary judgment or at trial.