ELAINE CUMMINGS, NANCY PATNAUDE AND DEBORAH WHITE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, APPELLANTS, v. CHARTER HOSPITAL OF LAS VEGAS, INC., SCOTT GLADSTONE, ROBERT BREWER AND DORIS JAVINE, RESPONDENTS.

No. 23603

May 25, 1995 896 P.2d 1137

---

*Hamilton D. Moore,* Las Vegas, for Appellants.

*Hafen & Mayor,* Las Vegas, for Respondent Charter Hospital.

*Alverson, Taylor, Mortensen & Nelson,* Las Vegas, for Respondents Gladstone and Brewer.

*Barker, Gillock, Koning, Brown & Earley* and *Anthony V. Sorrentino,* Las Vegas, for Respondent Javine.

## OPINION

By the Court, ROSE, J.:

Based on their involuntary detention in the respondent mental hospital, appellants Elaine Cummings (Cummings), Nancy Patnaude (Patnaude), and Deborah White (White) (collectively the patients), filed a class action complaint alleging, inter alia, a 42 U.S.C. § 1983 civil rights claim and a claim for civil racketeering. The district court declined to certify the action as a class

action. The district court also dismissed the patients' action for civil racketeering for lack of specificity in pleading and the patients' § 1983 civil rights claim because there was no showing of state action. We conclude that in detaining the patients against their will, the respondents were clothed with the authority of state law and exercised a power possessed by virtue of that law. Accordingly, respondents were state actors for the purposes of the § 1983 claim, and the district court erred in dismissing that claim with prejudice.

## FACTS

Since this case consists of review of an order dismissing the action, allegations set forth in the patients' complaint must be taken as true. *See* Blanchard v. Blanchard, 108 Nev. 908, 910, 839 P.2d 1320, 1321 (1992); Squires v. Sierra Nev. Educational Found., 107 Nev. 902, 905, 823 P.2d 256, 257 (1991). The basis for the complaint is that the patients were held, against their will, by the respondents at respondent Charter Hospital of Las Vegas (Charter) without any legal or medical basis for the purposes of fraudulently and illegally obtaining health care insurance benefits from the patients' insurance providers. The patients' complaint alleged: (1) that Cummings was held against her will at Charter from October 20, 1989, to November 15, 1989; (2) that Patnaude was held against her will from August 1, 1990, to August 18, 1990; and (3) that White was held against her will from July 18, 1990, to July 23, 1990. The complaint further alleged that respondents Scott Gladstone (Gladstone), Robert Brewer (Brewer), and Doris Javine (Javine), physicians at Charter, were responsible for the patients' detention.

On October 28, 1991, the patients filed a class action complaint naming as plaintiffs themselves, Debra Schlotfeldt (Schlotfeldt),[1] and all others similarly situated. The complaint averred causes of action for false imprisonment, intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, civil racketeering, and violation of civil rights under 42 U.S.C. § 1983.

Charter filed a motion to dismiss the patients' class action complaint, and Gladstone, Brewer, and Javine joined in the motion. Charter, along with Gladstone, Brewer, and Javine, argued that the patients' complaint must be dismissed as a class action, that the § 1983 claim must be dismissed because there was no showing of "state action," and that the civil racketeering claim must be dismissed for lack of specificity in pleading.

---

[1]Schlotfeldt had previously brought a similar action in the Eighth Judicial District Court, which was pending at the time the complaint in the instant case was filed. As such, Schlotfeldt was dismissed from the instant action in the district court, and she does not appeal that dismissal to this court.

The district court declined to allow the action to proceed as a class action, and it dismissed the complaint, with prejudice, insofar as it was brought as a class action. The district court further dismissed the patients' racketeering claim without prejudice and the patients' § 1983 claim with prejudice. Finally, the district court invited the patients to renew their claims by refiling separate actions, not to include any § 1983 claims. The district court's order stated, ''Each of the remaining Plaintiffs' actions of the remaining Plaintiffs, Nancy Patnaude, Deborah White and Elaine Cummings are hereby dismissed without prejudice. Each of said Plaintiffs may refile new lawsuits, nunc pro tunc, individually and in a manner consistent with this Court's Order.'' The patients appeal from this order.

## DISCUSSION

### Class Action

The patients contend that the district court erred in declining to certify the patients as a class so that the patients could proceed with the case as a class action. NRCP 23(a) states:

> **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

''[T]he determination to use the class action is a discretionary function wherein the district court must pragmatically determine whether it is better to proceed as a single action, or many individual actions in order to redress a single fundamental wrong.'' Deal v. 999 Lakeshore Association, 94 Nev. 301, 306, 579 P.2d 775, 778-79 (1978).

In the instant case, Schlotfeldt has not challenged on appeal her dismissal from the action. The remaining three patients cannot point to any others who might be included in the class, although they claim that there may be thousands of people in the class. It is the plaintiffs' burden to prove that the case is appropriate for resolution as a class action. Perez v. Personnel Bd. of City of Chicago, 690 F. Supp. 670, 672 (N.D. Ill. 1988). This burden includes the burden of proving that the plaintiff class is so large that proceeding as a class action is the only manageable method

of resolving the controversy. It is "incumbent upon [the plaintiffs] under the numerosity requirement of [NRCP 23] to identify some individuals who fall within [the proposed class], and that their number is so great as to render joinder impracticable." *Id.* at 672; *see* Hahn v. Breed, 606 F. Supp. 1557, 1563 (S.D.N.Y. 1985). We conclude that the patients have failed to make such a showing here.

In Kane v. Sierra Lincoln-Mercury, Inc., 91 Nev. 178, 533 P.2d 464 (1975), we held that a class of five plaintiffs is not so numerous that joinder of all members would be impracticable. *Id.* at 180, 533 P.2d at 465-66. We stated that "the class [of five persons] is far too small to justify a class action and on this basis alone the trial court properly dismissed the suit." *Id.* at 180, 533 P.2d at 466. Accordingly, the class of three plaintiffs in the instant case is insufficiently numerous to justify proceeding with the case as a class action.

In addition, the third claim for relief in the patients' complaint is a claim for fraud. In Johnson v. Travelers Insurance Co., 89 Nev. 467, 515 P.2d 68 (1973), we stated:

> As a general proposition, it is fair to state that a class suit to recover damages for fraud allegedly practiced upon numerous persons is not warranted. The inherent uniqueness of misrepresentation actions makes it difficult to find central facts susceptible of proof on a common basis.

*Id.* at 472, 515 P.2d at 72 (citation omitted). The patients' claim for fraud further militates against allowing the action to proceed as a class action. We conclude the district court did not abuse its discretion in precluding the patients from proceeding with the case as a class action.

*Misjoinder and Severance of Parties*

The patients contend that the district court erred in dismissing the patients' complaint on the grounds of misjoinder. NRCP 20(a) states, in part:

> **Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or of fact common to all these persons will arise in the action.

NRCP 21 states:

> Misjoinder of parties is not ground for dismissal of an

action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The district court has broad discretion to allow or deny joinder of parties. *See* Swanigan v. Rossi, 617 F. Supp. 66, 67 (E.D. Mich. 1985); *see also* 7 Charles A. Wright et al., Federal Practice and Procedure § 1652, at 372-73 (1986). In the instant case, none of the patients was admitted or released from Charter at the same time, and their claims involve different incidents with different physicians and employees. We conclude that the district court acted within its discretion in determining that the patients' claims did not arise out of the same transaction, occurrence, or series of transactions or occurrences, but rather arose from separate incidents.

After determining that the patients could not proceed with the case as a class action, the district court "dismissed without prejudice" the actions of the patients and allowed them to "refile new lawsuits, nunc pro tunc, individually." The district court's order did not function as a dismissal of the patients' actions, in violation of NRCP 21, but rather severed the actions of the patients and allowed them to proceed separately, which is permissible under NRCP 21. The district court's dismissal of the complaint was necessary since the complaint, captioned "Class Action Complaint," was brought as a class action, and the district court declined to allow it to proceed as a class action. Accordingly, we conclude that the district court did not abuse its discretion in ordering severance of the actions after it declined to allow the case to proceed as a class action and after it determined that the patients had been improperly joined as plaintiffs in the action.

## Civil Racketeering Claim

The patients contend that the district court erred in dismissing their civil racketeering claim for failure to plead the claim with specificity. The respondents acknowledge that the civil racketeering claim was dismissed without prejudice.

Nevada's anti-racketeering laws are codified at NRS 207.350 through NRS 207.520. Under NRS 207.470, a civil action may be brought by any person injured as a result of racketeering activity. NRS 207.390 provides:

"Racketeering activity" means engaging in at least two

> crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

Under NRS 207.360, kidnapping and obtaining money or property worth $250 or more by false pretenses are crimes related to racketeering. NRS 207.360(5); NRS 207.360(26).

In Hale v. Burkhardt, 104 Nev. 632, 764 P.2d 866 (1988), we determined that civil racketeering claims must be pled with specificity. *Id.* at 637-38, 764 P.2d at 869. The specificity required is that called for in a criminal indictment or information. *Id.* at 638, 764 P.2d at 869. "A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently 'plain, concise and definite' statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges." *Id.* at 638, 764 P.2d at 869-70. This means the complaint should provide information as to "when, where [and] how" the underlying criminal acts occurred. *Id.* at 637, 764 P.2d at 869. In conclusion, this court stated:

> We note in closing that [the appellant's] RICO cause of action does not fail because of any purely technical deficiency, such as the omission of citations to the criminal statutes relating to the criminal charges against [the respondent]. Nor is it defeated by simple failure to measure up to the standards of specificity discussed earlier. It suffers from a combination of these defects, but principally from a failure to state the necessary elements of the predicate crimes . . . .

*Id.* at 642, 764 P.2d at 872. In *Hale,* this court affirmed the district court's NRCP 12(b)(5) dismissal for failure to state a claim. *Id.* at 634, 636, 764 P.2d at 867, 869.

In the instant case, the patients' fourth claim for relief attempts to allege a claim for civil racketeering. However, the patients' complaint insufficiently states a claim against the respondents. The complaint does not state, in any detail, the circumstances surrounding the allegations, nor does it specify with particularity what conduct is complained of and when and where the conduct occurred. The district court did not err in dismissing the patients' civil racketeering claim for failure to plead the claim with sufficient particularity. However, since the district court dismissed the

civil racketeering claim without prejudice and expressly invited the patients to each file another complaint, the patients may replead their individual civil racketeering claims on remand.

## Section 1983 Claim

The patients contend that the district court erred in dismissing their § 1983 civil rights claim with prejudice because the respondents were not state actors. United States Code, ch. 42, § 1983 states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988). To prevail in a § 1983 action, a plaintiff must show that the conduct complained of: (1) was committed by a person acting under color of state law, and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156-57 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

The district court determined that the respondents in the instant case were not acting under color of state law. It is uncontroverted that Charter is a private hospital and that the respondent physicians are private doctors. The patients contend, however, that because the state imbued the respondents with the authority to commit other persons involuntarily, the respondents became state actors.

A private party may be deemed to be a state actor for § 1983 purposes under certain circumstances. Under the "public function" exception to the state action requirement, state action is present when the state delegates to a private entity "powers traditionally exclusively reserved to the State." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). The United States Supreme Court also discussed the state action requirement in West v. Atkins, 487 U.S. 42 (1988): "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law.'" *Id.* at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Therefore, in the instant case, respondents were state actors if their power to involuntarily commit the patients was traditionally exclusively a state function which has been delegated to them or was made possible because they were clothed with the authority of state law.

The § 1983 "state action" requirement has caused courts difficulty for years, and courts from other jurisdictions have disagreed whether private physicians and hospitals are state actors when they commit persons for treatment for mental illness. The United States Supreme Court has not addressed this specific issue, but two of its opinions illustrate the difficulties in this area of the law. In Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 151-53 (1978), the Court determined that a warehouseman's proposed sale of goods entrusted to him for storage, which was permitted by state law, was not state action because mere state authorization of activity does not make one a state actor. In West v. Atkins, 487 U.S. 42, 54, 57 (1988), the Supreme Court determined that a physician under contract with a state to provide medical services to state prison inmates acted under color of state law for purposes of § 1983 when he undertook to treat an inmate. The Court concluded that it was the "physician's function within the state system . . . that determine[d] whether his actions [could] fairly be attributed to the State." *Id.* at 55-56. The Court determined that the state delegated its function to the private physician, and by assuming the state's obligation, the physician became a state actor. *Id.* at 56.

Several United States Courts of Appeals have addressed the issue presented here and have concluded that private health care providers were not state actors. In Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992), the plaintiff brought a § 1983 action against her husband, a private hospital, and several physicians, based on their roles in her involuntary commitment for mental health treatment. *Id.* at 1129.

The Eleventh Circuit upheld the dismissal of the § 1983 claim against the hospital, concluding that it was not a state actor. *Id.* at 1130. The court concluded that involuntary commitment and detention is not a function which has traditionally been exclusively reserved to the state, and therefore it was not a state function, even if the private hospital exercised power co-extensive with the state. *Id.* at 1131. The court further determined that two doctors were not state actors. *Id.* at 1132-33. The court stated that "private persons . . . who act pursuant to state statutes to commit the mentally ill cannot be held liable under section 1983." *Id.* at 1133 (citing Dahl v. Akin, 630 F.2d 277, 281 n.3 (5th Cir. 1980), *cert. denied,* 451 U.S. 908 (1981)).

In Spencer v. Lee, 864 F.2d 1376 (7th Cir. 1989) (en banc), *cert. denied,* 494 U.S. 1016 (1990), the Seventh Circuit set forth the following question and answer: "Do a private physician and a private hospital act under color of state law, and therefore lay themselves open to suit under 42 U.S.C. § 1983, when they commit a mentally disturbed person? . . . [W]e hold they do not." *Id.* at 1377 (citing Byrne v. Kysar, 347 F.2d 734 (7th Cir. 1965), *cert. denied,* 383 U.S. 913 (1966)). In *Spencer,* the plaintiff's argument that there was state involvement was based on the existence of state statutes which permitted involuntary commitment in any mental health facility. *Spencer,* 864 F.2d at 1377. The court stated that the treatment of the mentally disabled has not traditionally been the exclusive function of the state. *Id.* at 1379.

The Fourth Circuit reached a similar conclusion. In Hall v. Quillen, 631 F.2d 1154 (4th Cir. 1980), *cert. denied,* 454 U.S. 1141 (1982), the plaintiff brought a § 1983 action against the physician who, under court appointment, examined him and recommended involuntary commitment. *Id.* The Fourth Circuit affirmed dismissal of the § 1983 claim in part on the ground that there was no state action. *Id.* at 1155-56; *see* Trimble v. Androscoggin Valley Hosp., Inc., 847 F. Supp. 226 (D.N.H. 1994); Faulk v. Ludwig, 732 F. Supp. 591, 599 (W.D. Pa. 1990); Landry v. Odom, 559 F. Supp. 514, 517-18 (E.D. La. 1983); Watkins v. Roche, 529 F. Supp. 327, 332 (S.D. Ga. 1981).

Despite the foregoing cases, many other federal courts have held that private hospitals and private physicians involved in the civil commitment of a person pursuant to state law are state actors. In Burch v. Apalachee Community Mental Health Serv., 840 F.2d 797, 803 (11th Cir. 1988) (en banc plurality opinion), *aff'd sub. nom* without addressing state action issue by Zinermon v. Burch, 494 U.S. 113 (1990), the Eleventh Circuit determined that a private hospital at which the plaintiff was admitted was a state actor because the hospital possessed the power to commit the plaintiff involuntarily only by virtue of being clothed with the authority of the state.[2]

In Ruffler v. Phelps Memorial Hospital, 453 F. Supp. 1062 (S.D.N.Y. 1978), the plaintiff, after voluntarily entering the defendant private hospital, was involuntarily committed. He brought a § 1983 action against the private hospital and its

---

[2]The three-judge panel in Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992), discussed above, stated that it was not bound by Burch v. Apalachee Community Mental Health Serv., 840 F.2d 797, 803 (11th Cir. 1988) because the *Burch* respondents' status as state actors was not disputed and *Burch* merely assumed and did not decide that state action existed. *Harvey,* 949 F.2d at 1132.

physicians. *Id.* at 1064-65. The court determined that state action was present in the hospital's confinement of the plaintiff. It concluded that the statute authorizing the confinement established that:

> [I]n the circumstances of this case the hospital was performing a "public function," and that in the field of mental health care the State expressly depends on the use of private facilities to effectuate its public policy of providing treatment for those who need it.

*Id.* at 1067. The court further stated: "Civil commitment and treatment of the mentally ill is undoubtedly a 'public function' in New York." *Id.* at 1068.

In Kay v. Benson, 472 F. Supp. 850 (D.N.H. 1979), the plaintiff brought a § 1983 claim against a physician who certified the plaintiff for commitment. The court found state action because the "power of detention is the type of power normally and historically exercised by sovereign states and other governmental entities." *Id.* at 851. The court concluded that the defendant physician was "clothed with state authority so substantial in nature as to render his actions virtually identical to actions traditionally taken by a state." *Id.*

In Rubenstein v. Benedictine Hosp., 790 F. Supp. 396 (N.D.N.Y. 1992), the court determined that a private hospital and its private physicians who committed the patient involuntarily were state actors. As to the hospital, the court concluded that "the involuntary commitment decision is one that would satisfy either the 'public function' or the 'close nexus' test." *Id.* at 404. The court rejected the decisions in both Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992), and Spencer v. Lee, 864 F.2d 1376 (7th Cir. 1989). *Rubenstein,* 790 F. Supp. at 404-06. The court stated that "the power of depriving liberty is one reserved to the State." *Id.* at 406; *see* Terri Keville, The Power to Confine: Private Involuntary Civil Commitment as State Action, 19 New Eng. J. on Crim. & Civ. Confinement, 61, 77 (1993) (the argument in *Spencer* that "confinement of the mentally ill was historically undertaken by private parties. . . . is entirely specious"); *see also* Plain v. Flicker, 645 F. Supp. 898, 905, 908 (D.N.J. 1986) (in concluding that a physician who was alleged to have had the plaintiff involuntarily committed was a state actor, the court found that the police power of the state was implicated in civil commitment, and the power of civil commitment arose "out of the historical responsibility of the sovereign to care for those who are mentally incompetent as well as to protect those who will be harmed if the patient is left at large"); Davenport v. Saint Mary Hosp., 633 F. Supp. 1228, 1234 (E.D. Pa. 1986) (stating

that "Supreme Court decisions suggest that it is exclusively the state's prerogative to confine an individual involuntarily to a mental hospital," and reversing dismissal of plaintiff's complaint for failure adequately to plead state action where plaintiff was involuntarily committed to a private hospital); Brown v. Jensen, 572 F. Supp. 193, 197 n.1 (D. Colo. 1983) ("when physicians and hospitals confine persons pursuant to a mental commitment statute, they are exercising the power of detention delegated to them by the state. Because this power is one historically exercised by the government, the acts of the physicians and hospitals in this connection constitute state action"); Perez v. Sugarman, 499 F.2d 761, 764-65 (2d Cir. 1974) (where New York City child welfare officials placed children in a private institution, the state utilized private entities to perform a traditionally exclusively public function, and therefore the private institution to whom state power was delegated was a state actor).

Nevada statutes regulate the involuntary commitment of persons within this state, and they permit private persons to "take an allegedly mentally ill person into custody without a warrant" and transport him or her to a private mental hospital. NRS 433A.160(1). Mere regulation is not sufficient to make an otherwise private action an action of the state. *See* Pinhas v. Summit Health, Ltd., 894 F.2d 1024, 1033-34 (9th Cir. 1989), *cert. granted in part on unrelated issue,* 496 U.S. 935 (1990), *aff'd by* Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991) (state regulation of a hospital is insufficient by itself to transform a private hospital into a state actor). However, NRS 433A.160 goes beyond mere regulation and authorizes the exercise by private persons of significant power over those alleged to be mentally ill. *See generally* NRS 433A.115-.330. We conclude that Nevada statutory provisions allowing private persons to detain the mentally ill constitute a delegation of state power, and the restraint of individuals against their will under a statutory grant of power constitutes state action.

In the instant case, the patients allege that Charter, Gladstone, Brewer, and Javine detained them against their will. Detention of persons against their will, as is necessary for an involuntary commitment, is traditionally a public function delegated by the state under certain circumstances to private health care providers. In detaining the patients against their will, the respondents were clothed with the authority of state law and exercised a power possessed by virtue of that law. West v. Atkins, 487 U.S. 42, 49 (1988). They were therefore state actors, and the district court erred in dismissing the patients' § 1983 claims with prejudice.

Thus, the patients may, in refiling their separate complaints, allege a cause of action for § 1983 civil rights violations.

We have carefully considered all other contentions on appeal, and we conclude that they either lack merit or need not be addressed in light of our disposition. We therefore affirm in part and reverse in part the order of the district court and remand the matter to the district court for further proceedings consistent with this opinion.

STEFFEN, C. J., and YOUNG, SPRINGER and SHEARING, JJ., concur.