Joseph A. CUVO, III, David S. Harman, George W. Leidy, Timothy D. Reilly, and Jeffrey M. Zemgulis

v.

CITY OF EASTON, Mayor Thomas Goldsmith, City Council President Robert Willever, Councilman Burns Bamford, Councilman Alfredean Jones, Councilwoman Barbara Groner, Easton Fire Civil Service Commission Members,

Craig Smith, Beth Milides and Raymond Imlay, and John F. Guido, Brad Harron, Joseph R. Adamski, Kenneth W. Heisinger, Thomas C. Luckey, Jeffrey Nicholls, Eric J. Orach, and Keith Frankenfield, Appellants.

Commonwealth Court of Pennsylvania.

Submitted April 19, 1996.

Decided June 24, 1996.

Ralph J. Bellafatto, for Appellants, John Guido, et al.

Carol J. Weaver, for Appellees, Joseph Cuvo, et al.

Before DOYLE and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, *Senior Judge.*

John F. Guido, Brad Harron, Joseph R. Adamski, Kenneth W. Heisinger, Thomas C. Luckey, Jeffrey Nicholls, Eric J. Orach, and Keith Frankenfield (collectively Intervenors or "non-City residents") appeal from the September 12, 1995 order of the Court of Common Pleas of Northampton County which upheld as valid and enforceable the City of Easton's one-year pre-employment residency requirement for firefighters established in Section 4 of the Firemen's Civil Service Act (Civil Service Act), Act of May 31, 1933, P.L. 1108, *as amended,* 53 P.S. § 39864.

### Issues

The issues presented on appeal are: 1) whether the Civil Service Act's pre-employment residency requirement limits the power granted to Easton under the Optional Third Class City Charter Law[1] to hire firefighters; or whether, to the contrary, such hiring is strictly a matter affecting the personnel and administration of Easton and is not a matter of statewide concern; and 2) whether the pre-employment residency requirement violates the right to interstate travel embodied in both the United States and Pennsylvania Constitutions.

We hold that the Civil Service Act's residency requirement is valid and affirm the Common Pleas order.

### Background

On April 14, 1993, City Council adopted Resolution No. 40–93, Rules and Regulations

---

1. Act of July 15, 1957, P.L. 901, *as amended,* 53     P.S. §§ 41101–41625.

of the Fire Civil Service Board. These regulations did not require a particular period of residency prior to applying for a firefighter position in the City of Easton. In December 1993, appellees Joseph A. Cuvo, III, David S. Harman, George W. Leidy, Timothy D. Reilly and Jeffrey M. Zemgulis (resident applicants), applied for the firefighter position after residing in Easton for a period of one-year and passed both the written and physical examinations. (Stipulation of Facts, R.R. 5a.) Thereafter, the resident applicants commenced an equity action against the City of Easton, its Mayor, the members of City Council and the members of the Fire Civil Service Commission, seeking to force the City's compliance with the Civil Service Act's pre-employment residency requirement and to prevent the City from considering applications from non-City residents. The City defendants filed an answer, new matter and counterclaim requesting a declaratory judgment that the pre-employment residency requirement was invalid and unenforceable.

The Honorable William T. Moran of the Court of Common Pleas of Northampton County, in an opinion and order dated September 12, 1995, found that the one-year pre-employment residency requirement was valid and enforceable and ordered and decreed that the City could not accept firefighter applications from the non-City residents. Following the City's decision not to appeal this order, the above-named non-City residents petitioned the trial court for intervention, which was granted on October 11, 1995. This appeal followed.[2]

## Discussion

### Applicability of the Residency Requirement to Home Rule Charter Third Class Cities

The City of Easton is a third class city under The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101—39701, which has adopted a home rule charter pursuant to the Optional Third Class City Charter Law. While the powers granted to Easton under the Optional Third Class City Charter Law are very broad and general, they are also limited in certain specific instances. Section 305 for example, provides:

Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

(1) Applicable to a class or classes of cities on the following subjects:

. . . .

(x) Relating to civil service.

53 P.S. § 41305(1)(x).

Section 4 of the Firemen's Civil Service Act provides, in pertinent part, that:

Each applicant shall have been a resident of the city in which he seeks employment for one year next preceding date of his application.

53 P.S. § 39864.

Intervenors argue that the one-year pre-employment residency requirement is not related to civil service but affects matters relating merely to the personnel and administration of the City of Easton. Such matters, they argue, are exclusively within the City's province and are not a matter of statewide concern, citing *Lennox v. Clark,* 372 Pa. 355, 93 A.2d 834 (1953); *Ebald v. City of Philadelphia,* 387 Pa. 407, 128 A.2d 352 (1957); and *Greenberg v. City of Bradford,* 432 Pa. 611, 248 A.2d 51 (1968). However, we believe that all three cases are distinguishable.

*Ebald* involved a suit by a Philadelphia Police Officer who sought to recover compensation for a disabling heart disease under the Heart and Lung Act.[3] The Supreme Court held that the Heart and Lung Act was superseded by Philadelphia Civil Service Regulation 32, which was promulgated in accordance with the Philadelphia Home Rule

---

**2.** This Court's scope of review is limited and we will not disturb a decree which is in the nature of a final decree in equity unless it is not supported by the evidence or is demonstrably capricious. *Tredyffrin–Easttown School District v. Valley Forge Music Fair, Inc.,* 156 Pa.Cmwlth. 178, 627 A.2d 814, 818 n. 4 (1993).

**3.** Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637—38.

Charter. There, the Heart and Lung Act was found not to apply because it was not specifically incorporated into Philadelphia's Home Rule Charter; here, however, as noted below, the Civil Service Act *is* incorporated into the Optional Third Class City Charter Law.

*Greenberg* is also distinguishable for similar reasons because it involved the issue of compensation for police and firefighters in the City of Bradford, although it too is a third class city operating under the Optional Third Class City Charter Law. Unlike civil service, the General Assembly did not provide for a specific enlargement or restriction of powers of such cities to regulate police compensation.

Finally, Intervenors cite the *Lennox* case, which involved an action brought following the passage of the First Class City Home Rule Act (Home Rule Act), Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. § 3421.1 et seq., and adoption of the Philadelphia Home Rule Charter, thereby consolidating the city and county governments in the City of Philadelphia. Our Supreme Court determined that as of the effective date of the Home Rule Charter, "*all* city officers and employees became immediately subject to these provisions of the Charter...." 372 Pa. 355, 368, 93 A.2d 834, 840 (1953)(emphasis added). We do not believe that *Lennox* allows this Court to ignore the specific provisions of Section 4 of the Civil Service Act which specifically requires one year's residency.

Moreover, the Legislature has specifically incorporated into the Optional Third Class Charter Law the provisions of the Civil Service Act, at Section 41415(e), to wit:

> (e) *Subject to the provisions of Article XLIV of the act of June 23, 1931 (P.L. 932), known as the "Third Class City Code" and the provisions of the act of May 31, 1933 (P.L. 1108),* entitled "An act providing for the appointment, promotion, reduction, removal and reinstatement of paid officers, firemen and employees of fire departments and of fire alarm operators and fire box inspectors in the bureaus of electricity in cities of the second and third class; defining the powers and duties of civil service commissions for such purposes; and fixing penalties," department heads shall appoint subordinate officers and employes within their respective departments and may, with approval of the mayor, remove such officers and employes.

53 P.S. § 41415(e)(emphasis added) (footnotes omitted).

Therefore, it appears that in two specific instances, the General Assembly has clearly expressed its intent that third class cities operating under either the Optional Third Class City Charter Law or the Third Class City Code are subject to the local civil service laws, and in particular, the Civil Service Act. As correctly noted by the trial court, the "focus of the civil service system is on rules governing application for employment, testing for employment, appointments to positions, promotions and removal from employment and the governance of the civil service system." (Trial Court's Opinion, p. 6.)

▮ In this case, we conclude that the one-year residency requirement is not merely a matter of local concern; it ensures that all applicants state-wide for the position of firefighter in third class cities governed by the Optional Third Class City Charter Law are treated equally. We conclude, therefore, that Home Rule Charter cities, such as Easton, which govern under the Optional Third Class City Charter Law, must observe the one-year residency requirement of Section 4 of the Civil Service Act, 53 P.S. § 39864, as an act relating to civil service under the Optional Third Class City Charter Law, 53 P.S. § 41305(1)(x).

### Constitutional Restrictions

Next, Intervenors argue that the one-year pre-employment residency requirement impairs their right to travel, as that right has been inferred from the privileges and immunities clause of section 2 of Article IV of the United States Constitution. Section 2 provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Intervenors also rely upon the equal protection clause of the Fourteenth Amendment. Intervenors assert that this right has long been a recog-

nized right by the United States Supreme Court. *See Shapiro v. Thompson,* 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969).

They argue that any restriction on travel, such as the one-year pre-employment residency requirement at issue in this case, must be supported by a compelling state interest. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Furthermore, Intervenors argue, if the "subject matter of the requirement is either a fundamental civil or political right or a matter essential to basic sustenance," then the courts will apply a strict scrutiny test to the restriction. *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 511–12, 329 A.2d 892, 896 (1974). Intervenors contend that the United States Supreme Court has repeatedly held that "pursuit of a 'common calling' is a fundamental right," citing *United Building and Construction Trades Council v. Mayor of Camden,* 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985); and *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). (Intervenors' Brief, p. 14.)

Finally, Intervenors argue that, after analyzing the restrictions under the strict scrutiny test, three federal district courts have invalidated similar pre-employment residency requirements. *See, Grace v. City of Detroit,* 760 F.Supp. 646 (E.D.Mich.1991)(the denial of an opportunity to compete for public employment until after a term of one-year residency is a substantial penalty and a very real hardship to persons who wish to relocate into a community); *Perez v. The Personnel Board of the City of Chicago,* 690 F.Supp. 670 (N.D.Ill.1988)(employment as a municipal police officer is sufficiently substantial that its denial to new residents for a period of over twenty months deters the individual from exercising his right to interstate travel and accordingly warrants strict scrutiny); and *Nehring v. Ariyoshi,* 443 F.Supp. 228 (D.Hawai'i 1977)(the denial of the opportunity to apply for public employment does have a sufficient enough impact upon the right to travel to require that the statute be justified by a compelling state interest).

With respect to their state constitutional claims, Intervenors argue that the right to travel freely is also recognized by the Pennsylvania Supreme Court in *Stottlemyer,* 458 Pa. 503, 329 A.2d 892 (1974).[4] Specifically, they argue that the pre-employment residency requirement is unconstitutional under Section 26 of the Pennsylvania Constitution, which provides that:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right....

Therefore, Intervenors contend, because the right to compete for public employment is a "civil right," it is entitled to Section 26 protection.

The appellee resident applicants argue that the strict scrutiny test is not applicable in this case because the right to compete for a job is neither a fundamental civil or political right nor is it a matter essential to basic sustenance. Appellees argue that following *Shapiro,* the United States Supreme Court seemed to limit the strict scrutiny test to those cases where a residency requirement impinges upon both the right to travel *and* some other fundamental right, such as voting, *Dunn;* or the receipt of non-emergency medical services, *Memorial Hospital.* However, the Supreme Court upheld a one-year residency requirement for establishment of jurisdiction in a divorce case because it did not interfere with the right to receive support or function as a citizen of the state, *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); and a one-year residency requirement for receiving lower college tuition in *Starns v. Malkerson,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), both times applying a reasonableness test.

■ More importantly, the resident applicants point out that the United States Supreme Court found that there is no constitutional right to employment as a police officer

---

4. However, in *Stottlemyer,* the Court held that Pennsylvania's requirement of a one year residence for divorce jurisdiction did *not* violate either equal protection or due process.

in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and in dicta in another case stated that "[n]either in those cases, nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident at the time of his application." *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 646, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976)(footnote omitted). Appellees argue that under a reasonableness test, a one-year residency requirement should be upheld because it bears a rational relationship to a legitimate state end. We agree.

After a thorough review of the relevant United States Supreme Court cases, we conclude that the one-year pre-employment residency requirement at issue in this case must be analyzed under the rational relationship test. As the District Court noted in *Perez v. The Personnel Board of The City of Chicago*, 690 F.Supp. 670 (N.D.Ill.1988):

> the Supreme Court has recognized that residence requirements by their very nature implicate the right to interstate travel. Thus, the government must justify any statute, regulation or policy that denies an individual a benefit or privilege on account of the individual's status as either a non-resident or new resident. To aid in the analysis, the Supreme Court classifies residence requirements as 'bona fide' or 'durational,' viewing the latter as potentially a greater burden on the right to travel and accordingly warranting closer scrutiny.

*Id.* at 673–674.

"Durational" residency requirements "penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period." *Dunn v. Blumstein*, 405 U.S. 330, 334, 92 S.Ct. 995,

999, 31 L.Ed.2d 274 (1972). The *Perez* court went on to state that:

> if the benefit or privilege denied to new residents is a fundamental constitutional right, the burden on interstate travel is sufficient to warrant strict scrutiny ...
>
> If the benefit or privilege at issue is not fundamental, however, the effect that the temporary denial of the benefit or privilege to a new resident has on interstate travel is determined on a case-by-case basis.

*Perez*, 690 F.Supp. at 674 (citations omitted).

Although Intervenors assert that the right to compete for public employment is a fundamental civil right, we could uncover no United States or Pennsylvania Supreme Court cases that support this contention.[5] In fact, the United States Supreme Court has at least in dicta concluded that the opposite is true, in that:

> This Court's decisions give no support to the proposition that a right of governmental employment per se is fundamental. See *San Antonio School District v. Rodriguez, supra* [411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) ]; *Lindsey v. Normet*, 405 U.S. 56, 73, 92 S.Ct. 862 [874], 31 L.Ed.2d 36 (1972); *Dandridge v. Williams, supra*, [397 U.S. 471] at 485 [90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) ]. Accordingly, we have expressly stated that a standard less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities.' *Ibid.*

*Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520.

In this case, the pre-employment residency provision clearly meets the requirements of the equal protection clause,[6] because the

---

5. We disagree with Intervenors that either *Commonwealth v. Moak*, 452 Pa. 482, 307 A.2d 884 (1973), or *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir.1980), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), stands for this proposition. *Moak* involved the question of whether assistant district attorneys in the City of Philadelphia were required to resign before becoming candidates for public office; and *Malmed* involved the issue of whether Pennsylvania's mandatory age of retirement for state judges was constitutional. Furthermore, the court in

*Malmed* noted in fact that "[n]or is the interest of appellees in public employment a fundamental interest." 621 F.2d at 570.

6. Despite Intervenors' assertion to the contrary, the United States Supreme Court has never specifically identified the constitutional source of the right to travel. Accordingly, although we analyze this case under the equal protection clause, under which many of the right to travel cases are brought, we would find the statute constitutional under a privileges and immunities analysis as

Commonwealth's classification rationally furthers the purpose identified in the Civil Service Act of providing a uniform system "for the appointment, promotion, reduction, removal and reinstatement of all officers, firemen, or other employees of fire departments," 53 P.S. § 39864, by requiring all third class cities to follow the same civil service rules. In addition, the Commonwealth has a great interest in the safety of its residents and in having potential firefighter candidates who have familiarity with the community and knowledge of the local geography allowing for quicker response on the job.

Accordingly, for all of the reasons stated above, we affirm the order of the trial court.

### ORDER

AND NOW, this 24th day of June, 1996, the order of the Court of Common Pleas of Northampton County dated September 12, 1995, at Docket No. 1995–C–209 is hereby affirmed.

---

well. The privileges and immunities clause "does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it...." *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92

L.Ed. 1460 (1948). As we conclude herein, we believe that the Commonwealth has valid, independent reasons for the pre-employment residency requirement.