George Marshall **GRACE**, Steven T. Lebow, and Kevin P. Pilate, et al., Plaintiffs,

v.

**CITY OF DETROIT**, Defendant.

Civ. No. 90 71078–DT.

United States District Court, E.D. Michigan, S.D.

April 5, 1991.

---

John R. Runyan, Detroit, Mich., for plaintiffs.

Terri L. Hayles, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This matter is before the Court on cross motions for summary judgment. For the reasons outlined below, the Court must grant partial summary judgment as to liability to Plaintiffs.

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, alleging abridgement of their right to travel in violation of the Equal Protection Clauses of the Constitutions of the United States and of the State of Michigan. Plaintiffs are applicants and

potential applicants for employment with the City of Detroit who have either been denied hire or the privilege of applying for positions with the City solely because of the city's pre-employment residency requirements.

The Court has granted Plaintiffs' unopposed motion for certification of a class composed of all past, present and future applicants for employment with the city who have been rejected on the basis of these requirements, including those who would have applied but for the requirements, as well as those whose applications either have been refused or rejected because of failure to establish either pre-application or pre-employment residency.

THE REQUIREMENTS

Since 1913, the City of Detroit has required that all persons filing application for positions in city service be residents at the time of the application.[1] The requirement is waived only for veterans honorably discharged from the Armed Forces of the United States,[2] or when the city deems it necessary to obtain applicants with greater or different education or experience than it concludes (by an unspecified process) would be available among its residents.[3]

Detroit residency is required of a candidate not only at the time of application but also throughout the formulation of the eligibility list and until the time of certification and hire. The city suspends from consideration all non-residents whose names appear on an eligibility register, including veterans, until such time as they do establish residence.[4] The general service residency rules were revised in 1974, following the adoption of a new City Charter.[5]

1. Involved here are provisions of the Civil Service Commission of the City of Detroit Rules and Regulations. The first residency requirement for general city employment, adopted on August 16, 1913 provides: Resolved,—That all applicants for all offices under the Civil Service, except laborers, shall reside in the City of Detroit for a period of one year previous to the taking of examinations. Unanimously carried. Minutes of the Meeting of the Civil Service Commission of the City of Detroit, August 16, 1913.

2. The veterans exception was added by amendment in 1946: Resolved: That veterans who were residents of the City of Detroit at the time they entered the armed forces be considered residents of the City of Detroit after discharge, whenever on their return from military service they are unable to secure a place to live within the City.

3. Civil Service Commission Rule No. 11 was adopted in 1919 and provides: Residence of applicants: All applicants for any position ... shall reside in the City of Detroit for a period of at least (1) one year previous to the taking of examination; provided, that in special exigencies where the service demands extraordinary or unusual skill or ability, the period of residence in the City may be entirely eliminated by this Commission.

   On February 22, 1966, the Commission approved the following amendment: That the application of the residence rule for continuing examinations where one year's continuous residence in Detroit ... is required immediately preceding the examination be changed to requiring *bona fide residence in the City of Detroit ... at time of application,* for a period not to

exceed December 31, 1966. Such change, which would require residence ... at the time of application instead of at least one year's continuous residence ... immediately prior to ... examination, is recommended in order to make available for examination more qualified applicants. (Emphasis in original). (Subsequent Civil Service Commission Rules removed the temporary nature of this amendment.)

4. A 1948 amendment to the rules added this provision: Unless otherwise ordered by the Commission ..., no non-resident eligible should be certified for employment as long as there are resident eligibles on the eligible list. Any non-resident eligible reached for certification shall have his certification deferred until such a time as he shall advise the Commission that he has established residence within the City of Detroit....

5. The current rule provides: All persons filing application for an examination for positions in city service must be residents of the City of Detroit ... at the time of application. This requirement is waived for persons serving in or who were honorably discharged from the Armed Forces of the United States. In addition, the Civil Service Commission may waive the residence requirement for examination upon request of an employing department or upon its own motion when it appears that it will probably be impossible to secure a sufficient number of qualified applicants who are Detroit residents.

   ... [N]on-residents who are successful on an examination shall be placed on the eligible register, but shall not be certified for employment

On August 22, 1974, the Chief of Police of the City of Detroit published a Special Order setting forth the requirement that police officer applicants, including veterans, are required to have been residents of the city of Detroit for at least sixty days prior to the date of making application.[6] Absolutely no one is permitted to apply to be a Detroit police officer who does not already reside within the city limits.

The period of time between application and certification may be as long as three years, depending upon the nature of the job and the number of applicants for a position in city service. The period from application through the formulation of an eligibility list ranges from two months to a year depending upon the same criteria. The practical effect of these requirements is to impose a residency requirement of substantial duration, for the mere opportunity to compete and without any certainty of ultimate success.

█ It is undisputedly the right of the City to require residency of those who actually do become city employees. *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); *Williams v. Civil Service Commission*, 383 Mich. 507, 176 N.W.2d 593 (1970); *Detroit Police Officers Assn. v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972).

### THE REPRESENTATIVE PLAINTIFFS

Plaintiff George Grace applied for employment as a construction inspector in September, 1989. He was not a Detroit resident at that time, but his application was accepted pursuant to the policy of accepting applications from honorably discharged non-resident veterans. Grace

passed the required oral and written examinations and was placed on the eligibility registers. Despite his repeated inquiries and his eligibility, he was never offered employment for the stated reason that he was not a resident.

Plaintiff Kevin Pilate sought employment as an Emergency Mobile Medical Technician on June 23, 1989. When he requested an application, he was asked whether he was a resident or a veteran. When he replied that he was neither, he was denied the opportunity to apply.

Plaintiff Steven Lebow attempted to apply for a police officer position on January 25, 1988. His application was rejected because he had not been a resident for sixty days. Lebow was born and raised in Detroit, attended Wayne State University and retains substantial ties to the city. He currently resides in Oak Park, a contiguous community.

All three named plaintiffs had informed the city that, if hired, they would move to Detroit.

### THE STANDARD OF REVIEW

The right to travel is a fundamental constitutional right:

> [F]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution.... The right to travel is an "unconditional personal right," a right whose exercise may not be conditioned.

*Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

█ Accordingly, governmental action which deters or penalizes this right is invalid unless it can withstand strict scrutiny under the compelling governmental interest test. As the Supreme Court stated in *Shapiro v. Thompson*, 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969):

---

as long as there are Detroit residents on the register. Such non-residents shall have their eligibility for certification suspended until such time that they have established their residence in compliance with the residence requirement for employment. Rule XII, Civil Service Commission of the City of Detroit.

**6.** The police officer applicant rule provides: It shall be the policy of the Detroit Police Depart-

ment to accept applications and reapplications for employment as police officers only from those persons who shall have resided in the State of Michigan one year next preceding their application and who have established permanent residence in the City of Detroit at least 60 days prior to said application.

"Since the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a *compelling* state interest."

Although the Supreme Court has not considered the constitutionality of residency requirements for public employment, it has nullified one-year waiting periods for welfare benefits and free hospital care because they penalized the fundamental right to travel interstate by depriving newcomers of vital benefits and privileges. *Shapiro v. Thompson, supra; Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

■ Here, the right to compete for government employment with city residents, on condition that one will become a city resident when employed, is a vital benefit and privilege. Employment, like public welfare, is the means of providing one's family with the necessities of life. The denial of an opportunity to compete for public employment until after a term of residency has been established is a substantial penalty and a very real hardship to persons who wish to relocate into a community. As the Michigan Court of Appeals stated in *Musto v. Redford Township*, 137 Mich.App. 30, 34–35, 357 N.W.2d 791 (1984):

> ... A person residing in one location who has the ambition to become an employee of a police or fire department must either move to another specific location or remain in his or her present location and apply for employment there. Prospective applicants must play a guessing game as to where an employment opportunity is most likely to occur within any given one-year period. This illustrates the substantial burden placed upon the right to travel among the large class of persons seeking employment....

Thus, such a denial is subject to constitutional review under the strict scrutiny or compelling governmental interest test.

■ Under this test, the city's rules "may withstand constitutional scrutiny only upon a clear showing that the burden imposed is necessary to protect a compelling and substantial governmental interest." *Dunn v. Blumstein, supra*, 405 U.S. at 343, 92 S.Ct. at 1003. In pursuing its compelling interest, the city "cannot choose means that unnecessarily burden or restrict constitutionally protected activity." *Id.* at 343, 92 S.Ct. at 1003. In other words, the means chosen must be closely tailored to the achievement of the goals claimed. If there are other more reasonable ways for the city to achieve its goals, which place a lesser burden on constitutional activity, the city may not choose the way of greater interference. "If it acts at all, it must choose 'less drastic means.'" *Id.* at 343, 92 S.Ct. at 1003, quoting *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

■ Even if the city's requirements were reviewed under the less stringent rational basis test, they would still be unconstitutional. *Musto, supra*, 137 Mich.App. at 34, 357 N.W.2d 791 ("... we also conclude that even under the 'rational basis' test, the statute in question must fall".) Under the rational basis test, the city only need show that its rules bear a rational relationship to a legitimate governmental interest. *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

## THE CITY'S ARTICULATED INTERESTS

Defendant City claims that the pre-employment residency requirement for general service employment is necessary for ease of administration of recruitment and selection. The city then argues that the requirement is necessary for it to meet its mandate to ensure a workforce representative of the racial and gender composition of the city. Finally, the city maintains that the policy is necessary to address high unemployment and underemployment within the city.

With respect to the sixty day requirement for police applicants, the city advances the additional justification that it facilitates the necessary background check of every candidate.

## THE REQUIREMENTS ARE UNCONSTITUTIONAL

■ The city contends that the requirements are not durational in nature and therefore not governed by the Supreme Court's right to travel cases. The Court finds, however, that the sixty day requirement for police officer applicants is a durational requirement, that the general service requirement is a fixed point requirement and that both violate the equal protection clause of the Fourteenth Amendment of the United States and Michigan Constitutions.[7]

The city further contends that federal constitutional protection for the right to travel extends only to interstate and not intrastate travel, and that because the representative plaintiffs are lifelong Michigan residents, they may not seek the relief sought herein under the Federal Constitution. The city's requirements, however, are no different for members of the class who may reside in other states.

The Michigan Court of Appeals has determined that the right to travel between counties and municipalities in Michigan is protected by the Equal Protection Clause of the Michigan Constitution. *Musto, supra*, held that a requirement that an applicant for employment in a police or fire department must be a resident of the municipality for one year prior to filing an application violated the Michigan constitution:

The *Grano* [*Grano v. Ortisi*, 86 Mich. App. 482, 272 N.W.2d 693 (1978) ] Court made no distinction between the right to freedom of travel on an interstate and intrastate basis and we see no logical distinction between the right of a person to travel between states (which is protected by the United States Constitution) and the right to travel between locations in the State of Michigan (which we find to be protected by the Michigan Constitution). The problem is identical and the analysis ought to be identical.

137 Mich.App. at 34, 357 N.W.2d 791.

*Musto* has been the law in Michigan since 1984, yet the City of Detroit has continued to enforce its unconstitutional pre-employment residency requirement.

## DEFENDANT'S ASSERTED JUSTIFICATIONS ARE WITHOUT MERIT

The City asserts that its pre-employment residency requirements are necessary to implement affirmative action in hiring policies. However, affirmative action goals may be accomplished directly, without the use of residence as a proxy for race. Residence is not race; and although Defendant appears to argue that the residency requirements here are a means of excluding whites from consideration, assuming that this is a lawful means of accomplishing affirmative action, the rules actually discriminate against non-residents of all races.

Defendant argues that it makes exceptions to increase the applicant pool for jobs in the more highly educated classifications. Non-residents may apply for positions in the arts and other cultural areas, and as nurses, engineers, professionals and administrators, and in skilled trades requiring a journeymans license. The rule, therefore,

---

7. Durational residency requirements are those which condition eligibility for some benefit or privilege on how long one has lived in the jurisdiction, such as one years' residency in a state before one can vote in state elections. These were struck down in *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (one year requirement to vote in state elections); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (one years' residency to be eligible for welfare benefits) and *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (one years' residency required for free medical care).

Fixed point residency requirements are those by which one must have been a resident at some fixed point in time to be eligible for some benefit or privilege. These were struck down in *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (residence in New York at the time one entered the Armed Forces necessary for bonus points in civil service system); *Hooper v. Bernalillo*, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (residence in New Mexico before May 8, 1976 necessary for tax exemption for Vietnam veterans) and *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (for each year of residence subsequent to 1959, residents granted one state mineral income dividend.

by its own claimed mode of operation, results in the development of a city population which is not only segregated to be more Black, but whose Black population is also more likely to be underemployed. The claimed goal of affirmative action apparently is abandoned in the higher classifications at the unbridled discretion of any department head.

Moreover, the city's affirmative action policies for police officers were long ago declared constitutional. *Bratton v. City of Detroit*, 704 F.2d 878 (6th Cir.1983), *on reh'g*, 712 F.2d 222 (6th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984), *reh'g denied*, 465 U.S. 1074, 104 S.Ct. 1431, 79 L.Ed.2d 754 (1984). There is no need or justification for attempting to accomplish this goal through subterfuge.

The city also contends that the general services pre-employment residency requirement was first developed in 1913 and has continued virtually unchanged since then. Therefore, the argument that the rule was established and continued for purposes of racial equity is not credible or tenable. Indeed, all of Defendants' asserted justifications for its residency requirements appear to have been developed *ex post facto*.

Nevertheless, even if the rule had been adopted first out of concern for the racial and ethnic composition of the City's workforce, it does not meet that concern and the substantial burden it places upon Plaintiffs' constitutional right to travel cannot be justified on that basis. Under established equal protection principles, Defendant is obliged to establish not only a compelling governmental interest but is also required to choose means to effectuate its goals which are narrowly tailored to the achievement of those goals. *Wygant v. Jackson Board of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). Here, the city's pre-employment residency rules are not sufficiently narrowly tailored to pass constitutional muster on any of the bases argued. Indeed, the rules are not even rationally related to the goals claimed.

Defendant next claims that the requirements allow it to remediate the unemployment and underemployment which exists within the city. Again, there is no evidence that the requirements were actually adopted with this justification in mind, or that they are even rationally related to such goals. Once hired, every applicant becomes an employed city resident. Moreover, unemployed residents who are qualified to compete for city service remain free to do so, without these rules.

The City claims that the sixty day requirement for police officer applicants "enhances the department's ability to conduct the mandatory background check" because the investigation requires personal visits to an applicant's home, to the homes of his or her references, and to the applicant's current employer. The City claims that the pre-employment requirement eliminates the need to make such personal visits to out-state or out-of-state locations. This requirement also results in the hiring of police officers who are familiar with their community, according to Defendant. Each of those goals may easily be achieved by other means.

These rationales were advanced by Redford Township and rejected by the Michigan Court of Appeals in *Musto:*

> ... one can move into a community for the mere purpose of establishing a residence while continuing one's employment and social activities elsewhere. In the one-year period such an individual would acquire almost no familiarity with the community and establish no roots or commitment to the community which would justify a claim that the applicant has established links ... that would either enable officials to adequately investigate his background or which would be an adequate prediction of loyalty and dedication to the interests of the municipality. On the other hand, one could live in Redford Township for years or even decades, move to a contiguous community, maintain employment and strong local ties to family, friends and institutions but nevertheless be ineligible for employment ... simply because of a physical move across a boundary which could be equivalent to a move across the

street. In these days of high mobility and rapid communications, the arguments of defendants are not able to pass a test of rationality.

*Musto, supra,* 137 Mich.App. at 36, 357 N.W.2d 791.

Finally, the city contends that administration of recruitment and selection are made easier by these requirements. However, it has long been the rule that a constitutional right may not be burdened for mere administrative convenience. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

In summary, the Court holds that the City of Detroit's pre-employment residency requirements result in an impermissible burden on the fundamental right to travel, when reviewed under the compelling state interest test. Even under the less stringent rational basis test, the City's requirements are unconstitutional. None of the City's proffered explanations for these rules are supported by either compelling or rational justifications, nor are the reasons given served by the rules adopted.

Accordingly, the Court grants Plaintiffs' motion for partial summary judgment on the issue of liability and hereby enjoins the City of Detroit from enforcing its pre-employment residency requirements.

SO ORDERED.