Kevin R. WALSH and Blane M. Wilson, as individuals and on behalf of all others similarly situated, Plaintiffs,

v.

CITY AND COUNTY OF HONOLULU, a Hawaii municipal corporation; Mark J. Bennett, Attorney General of the State of Hawaii, in his official capacity; and Marie Laderta, Interim Director, State of Hawaii Department of Human Resources Development, in her official capacity, Defendants.

No. CV 05–00378 DAE LEK.

United States District Court, D. Hawai'i.

Feb. 1, 2006.

---

Anne L. Williams, Davis Levin Livingston Grande, Lois K. Perrin, American Civil Liberties Union of Hawaii, Michael K. Livingston, Davis Levin Livingston Grande, Honolulu, HI, for Kevin R. Walsh as an individual and on behalf of all others similarly situated, Blane M. Wilson as individuals and on behalf of all others similarly situated, Plaintiffs.

Donna M. Woo, Office of Corporation Counsel–Honolulu, Gordon D. Nelson, Office of Corporation Counsel–Honolulu, Charleen M. Aina, Office of the Attorney General–Hawaii, Deirdre Marie–Iha, Office of the Attorney General–Hawaii,

James Earl Halvorson, Office of the Attorney General–Hawaii, Richard H. Thomason, Office of the Attorney General–Hawaii, Honolulu, HI, for Kenneth Y. Nakamatsu Director, City and County of Honolulu Department of Human Resources, in his individual and official capacities, City and County of Honolulu a Hawaii municipal corporation, Mark J. Bennett in his official capacity as the Attorney General of the State of Hawaii, Kathleen N.A. Watanabe Director, State of Hawaii Department of Human Resources Development, in her individual and official capacities, Marie Laderta Interim Director, State of Hawaii Department of Human Resources Development, in her official capacity, Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

EZRA, District Judge.

The Court heard Plaintiffs' Motion on January 30, 2006. Lois Perrin, Esq., and Anne Williams, Esq., appeared at the hearing on behalf of Plaintiffs; Gordon Nelson and Donna Woo, Deputies Corporation Counsel, appeared at the hearing on behalf of Defendant City and County of Honolulu ("the City"); and Mark Bennett, Attorney General, Deirdre Marie–Iha, and Charleen Aina, Deputies Attorney General, appeared at the hearing on behalf of Defendants Mark Bennett and Marie Laderta ("State Defendants"). After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction.

### BACKGROUND

Plaintiffs challenge the constitutionality of the pre-employment residency requirement for public employment set forth in Hawaii Revised Statute Section 78–1(c). That section provides as follows:

All persons seeking employment with the government of the State or in the service of any county shall be citizens, nationals, or permanent resident aliens of the United States, or eligible under federal law for unrestricted employment in the United States, and residents of the State at the time of their application for employment and as a condition of eligibility for continued employment.

"Resident" means a person who is physically present in the State at the time the person claims to have established the person's domicile in the State and shows the person's intent is to make Hawaii the person's permanent residence. In determining this intent, the following factors shall be considered:

(1) Maintenance of a domicile or permanent place of residence in the State;

(2) Absence of residency in another state; and

(3) Former residency in the State.

Haw.Rev.Stat. § 78–1(c).

The Hawaii Administrative Rules provide that "[a]pplicants shall be residents or former residents of the State and citizens, nationals, permanent resident aliens of the United States ... at the time of application." Haw. Admin. R. § 14–3.01–4. At the hearing, State Defendants represented that this rule has been repealed.

In addition, the City has implemented the residency requirement through its Civil Service Rules. Initially, Section 3–4 provided that at the time of application, applicants shall be residents or former residents of the State. However, prompted by the instant lawsuit, effective November 19, 2005, the City amended the rule to eliminate the reference to "former residents."

On March 15, 2005, prior to the amendment to the Civil Service Rule and prior to any action taken to repeal the administra-

tive regulation, Kevin Walsh ("Walsh") applied for three positions with the City. On May 20, 2005, Blane Wilson ("Wilson") applied for one position with the City. Question 4 of the City's electronic application for employment that Plaintiffs filled out provided as follows: "RESIDENCY REQUIREMENT: The Hawaii public employment law requires that applicants be current or former legal residents of Hawaii at the time of application." (Walsh Decl. ¶ 6; Wilson Decl. ¶ 17, attached to Pls.' Mot.) Both Plaintiffs responded that they were not a legal resident of Hawaii. Walsh received three rejection letters, one for each position, and Wilson received one rejection letter. Each rejection letter stated that "your application cannot be accepted because you are not a resident of the State of Hawaii, which is required for this position. Hawaii State law requires that applicants be current or former residents of Hawaii at the time of application." (Walsh Decl. Exs. 1–3; Wilson Decl. Ex. 3.) Wilson also applied for a job with the State. He received a letter dated March 15, 2005, informing him that he was ineligible for the position because he did not meet the minimum experience required and he was not a legal resident of the State of Hawaii. (Wilson Decl. Ex. 2.)

Plaintiffs seek a preliminary injunction barring Defendants from enforcing the pre-employment residency requirement of Hawaii Revised Statute Section 78–1(c).

## STANDARD OF REVIEW

In order to obtain a preliminary injunction, the moving party must demonstrate either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in [the plaintiff's] favor." *Am. Tunaboat Ass'n v. Brown,* 67 F.3d 1404, 1411 (9th Cir.1995) (brackets in original); *Warsoldier v. Woodford,* 418 F.3d 989, 993–94 (9th Cir.2005). These

two formulas are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,* 762 F.2d 1374, 1376 (9th Cir.1985) (citations omitted). "Under any formulation of the test, [however,] the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id.* It is within the court's discretion to grant or deny a motion for preliminary injunction. *Id.*

## DISCUSSION

Plaintiffs argue that the pre-employment residency requirement is unconstitutional because it has the impermissible purpose of deterring migration into the State. Plaintiffs further argue that the law violates the Equal Protection Clause because it violates the fundamental right to travel by imposing a de facto durational requirement, and because it treats former residents different from non-residents. Finally, Plaintiffs argue that the residency requirement violates the Privileges and Immunities Clause of Article VI since it discriminates against non-residents seeking to practice their trade.

Defendants argue that Plaintiffs lack standing and that Plaintiffs' challenge to the "former residency" factor is moot. Defendants also argue that Plaintiffs' Privileges and Immunities claim fails because public employment is not a fundamental right. Defendants further argue that Plaintiffs' Equal Protection claim fails because the residency requirement is non-durational and meets the rational basis test.

## I. *Standing*

Defendants initially argue that Plaintiffs do not have standing to challenge the constitutionality of Hawaii Revised

Statute section 78–1. To have standing, a plaintiff must demonstrate: 1) an injury in fact—an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct—an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir.1996).

Defendants argue that Plaintiff Wilson lacks standing because he fails to meet the first and third requirements of the *Lujan* standing test. First, Defendants argue that Wilson was not qualified for the State position that he applied for, and therefore, would have been rejected for that position regardless of his residency status. Consequently, he suffered no injury in fact from his rejection and his injury cannot be redressed by a favorable decision. Second, Defendants argue that Wilson cannot challenge the former residency requirement because it has not caused him any injury in fact. Finally, Defendants argue that Wilson does not have standing to raise a right to travel claim, because he has subsequently moved to Hawaii, and therefore has received no injury in fact to his right to travel.

Defendants argue that Plaintiff Walsh lacks standing with respect to the State because, he did not actually apply for a position with the State and thus suffered no injury in fact. Additionally, Defendants assert that any claim by Walsh that he was deterred from applying to positions with the State is too generalized and conjectural to meet the requirement of injury in fact. Finally, Defendants argue that the standing arguments that apply to Plaintiff Wilson also apply to Walsh.

Plaintiffs Walsh and Wilson argue that they both have standing to challenge the statute pursuant to the "deterred applicant" doctrine espoused by the Supreme Court in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). They argue that the prohibition on non-residents applying for public employment in Hawaii has convinced them that submitting an application for State or City positions is futile. Plaintiffs argue that they were both rejected by the City based purely on their non-residency status, and that Wilson was rejected by the State, at least in part, for lack of Hawaii residency. Therefore, Walsh and Wilson both allege they have an injury in fact that can be redressed stemming from their outright rejection by the City. Both Plaintiffs also argue that they have an injury in fact that can be redressed in relation to the State. This injury stems from the effect that the City rejections, coupled with the widespread posting of the statutory requirement of residency (and in Wilson's case his actual rejection by the State), have had in deterring them from seeking other available public positions in Hawaii.

In *Int'l Bhd. of Teamsters*, the Supreme Court held that a large class of people who did not apply for the specific job at issue had nonetheless suffered an injury in fact that could be redressed. 431 U.S. at 324, 97 S.Ct. 1843. This injury existed since the class of people were deterred from even applying for the job because the practices of the Union convinced them that it would be futile to do so.

> If an employer should announce his policy of discrimination by a sign ... on the hiring-office door, his victims would not be limited to the few who ignored the

sign and subjected themselves to personal rebuffs ... [w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes though the motions of submitting an application.

*Id.* at 365–66, 97 S.Ct. 1843.

■ Here, the City's application for employment specifically informed Plaintiffs that they need not apply for the job since Hawaii law requires that applicants be current or former residents of the State. This application is analogous to a sign on the hiring office door explicitly stating an employer's policy of discrimination. In both cases, the applicant is informed explicitly and unequivocally that because he falls into a disfavored group it is impossible for him to obtain employment.

In addition, the rejection letters from the City state that Plaintiffs' applications were not even accepted or reviewed because of their lack of Hawaii residency. This in turn deterred Plaintiffs from applying for other public positions because doing so would be futile. Indeed, Wilson stated that "[b]ased on my rejections to date due to my non-resident status, I have been discouraged from applying for any other government jobs with the City and County and the State of Hawaii." (Wilson Decl. ¶ 26.) Walsh stated that "because of the conspicuously displayed residency requirement and because I am not nor have I ever been a Hawaii resident, I was and remain deterred from applying for any position with the State of Hawaii or any further jobs with the City and County of Honolulu." (Walsh Decl. ¶ 11.) Thus, Wilson and Walsh both have injuries in fact that can be redressed as they are both deterred applicants who still wish to apply for available City and State open positions in the future.

Further, Defendants' standing argument that Wilson was not qualified for the specific State position to which he applied is misplaced. The statute and its effects have clearly deterred Wilson from applying for other public positions, for which he may have been qualified. Thus, even if Wilson was not qualified for the specific job at issue here, the injury is the deterrence itself. This is a recognizable injury in fact under the rationale of *Int'l Bhd. of Teamsters.* 431 U.S. at 365–66, 97 S.Ct. 1843.

Moreover, Defendants' argument that neither Wilson nor Walsh can challenge the provision of the statute that differentiates between non-residents and former Hawaii residents because they have suffered no injury in fact from this provision also fails. Plaintiffs argue that this provision distinguishes between two types of non-residents and then impermissibly favors one over the other. Because both Plaintiffs fall into the disfavored category of non-residents they both have standing to challenge such a provision.

■ Finally, Defendants' argument that Wilson does not have standing to assert a right to travel claim because Wilson did in fact travel to Hawaii fails as well. The right to travel finds its roots in multiple sections of the Constitution, including Article IV Section 2, Article I Section 8, the Fourteenth Amendment, and inherently from our federal structure of government. *Attorney Gen. of N.Y. v. Soto–Lopez,* 476 U.S. 898, 901–02, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). This concept encompasses more than simply the right to enter and leave the borders of a state. Wilson has standing to challenge this statute for infringing on his right to travel because the injury he is claiming to have suffered is encompassed by an expansive understanding of the right to travel. Wilson is alleging that although he now lives in Hawaii, he is not being given all of the bene-

fits of State citizenship to which he is due under the Privileges and Immunities Clause of Article IV and the various other sections of the Constitution from which the right to travel flows. In addition, as he is not a Hawaii resident, there is no reason to treat him differently from Walsh with respect to standing based solely on his physical presence in the State.

Accordingly, this Court finds that both Plaintiffs have standing to challenge the Constitutionality of Hawaii Revised Statute section 78–1.

## II. *Likelihood of Success on the Merits*

The right to travel from one state to another has long been held to be a fundamental right, even though it is not enumerated as such in the text of the United States Constitution. *United States v. Guest*, 383 U.S. 745, 757–58, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). This right has been considered to spring from various clauses of the Constitution, including the Privileges and Immunities Clause of Article IV, and the Equal Protection Clause, the two clauses pursuant to which Plaintiffs bring this lawsuit. *Soto–Lopez*, 476 U.S. at 902, 106 S.Ct. 2317.

■ The right to travel includes the right of a citizen of one state to enter and leave another state, to be treated as a welcome visitor while temporarily present in the second state, and "for those travelers who elect to become permanent residents, the right to be treated like citizens of" the second state. *Saenz v. Roe*, 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). "State law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of

that right." *Soto–Lopez*, 476 U.S. at 903, 106 S.Ct. 2317 (citations and internal quotation marks omitted).

Courts have held that all residency requirements implicate the right to interstate travel and thus must be justified by the state imposing the requirement. *Perez v. Personnel Bd. of the City of Chic.*, 690 F.Supp. 670, 674 (N.D.Ill.1988); *Andre v. Bd. of Trs. of Village of Maywood*, 561 F.2d 48, 52 (7th Cir.1977). In order to determine what level of scrutiny to employ to determine whether a residency requirement is constitutionally justified, the court must determine the extent to which the requirement impinges upon the right to travel. *Nehring v. Ariyoshi*, 443 F.Supp. 228, 236 (D.Haw.1977) ("in order to determine whether the compelling state interest test should be invoked, a court must analyze the extent of a law's impact on interstate travel ...") (citing *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 256–62, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974)).

■ Where a state law sufficiently burdens the right to travel, the court applies a strict scrutiny analysis, requiring the law to be necessary to further a compelling state interest. *Id.; Soto–Lopez*, 476 U.S. at 904–06, 106 S.Ct. 2317 (a heightened scrutiny is triggered where a state law operates to penalize those persons who exercise their right to migration). Although not all durational residency requirements require application of the strict scrutiny test, the Supreme Court and this Court have applied the strict scrutiny test to laws that impose a durational residency requirement and infringe on the right to travel. *See Soto–Lopez*, 476 U.S. at 904–06, 106 S.Ct. 2317; *Nehring*, 443 F.Supp. at 236; *Grace v. City of Detroit*, 760 F.Supp. 646 (E.D.Mich.1991).[1] This is be-

---

1. *See also Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (requiring the state to show a compelling interest to support a one-year durational resi-

dency requirement for the receipt of welfare benefits and striking down the requirement as unconstitutional); *Dunn v. Blumstein,* 405 U.S. 330, 339–42, 92 S.Ct. 995, 31 L.Ed.2d

cause the durational requirement classifies residents of the same state based solely upon their time of migration and results in a penalty of "unequal distribution of rights and benefits among otherwise qualified bona fide residents." *Soto–Lopez,* 476 U.S. at 903, 106 S.Ct. 2317; *Perez,* 690 F.Supp. at 674; *Nehring,* 443 F.Supp. at 237 (applying strict scrutiny analysis since the durational residency requirement for public employment operated as penalty for newly arrived residents).

■ Where the law at issue is merely a bona fide residence requirement, the court need only apply the rational relation test to determine whether the law is justified. *Perez,* 690 F.Supp. at 674. This is because the fact of residency itself is distinct from a durational residency requirement. *McCarthy v. Phila. Civil Serv. Comm'n,* 424 U.S. 645, 647, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (upholding a continuing residency requirement in order to remain a municipal employee since a residence requirement and a waiting period requirement are distinct prerequisites); *Andre,* 561 F.2d at 52–53 (citing cases noting that there is a difference between bona fide residence requirements and durational requirements and upholding a requirement that municipal employees establish residency within a certain period of time after becoming employed).

This Court previously addressed the issue of the level of scrutiny to apply in order to determine whether a prior version of Hawaii Revised Statute section 78–1 was unconstitutional. *Nehring,* 443 F.Supp. at 237. At that time, Hawaii Revised Statute section 78–1 had a durational provision in its text, providing that all employees in public employment had to be residents of the State for at least one year immediately preceding their application for

employment. *Id.* at 229. This Court found that the denial of the opportunity to new residents to apply for public employment for a one-year period had a sufficient enough impact upon the right to travel to require that strict scrutiny analysis be applied. *Id.* at 237. This is because, at the time, approximately 12% of the jobs available in Hawaii were public employment jobs and the forced inability of a new resident to apply for those jobs acted as a penalty, particularly for those people who were trained for work primarily performed by the government. *Id.* Applying the strict scrutiny analysis, the Court found that the State failed to establish a compelling interest for the statute and therefore the durational residency aspect of Hawaii Revised Statute 78–1 violated the Equal Protection Clause. *Id.* at 239. The Court also noted that the original version of the statute, which had included a three-year residency requirement to be eligible for public employment, had previously been struck down by the Hawaii Supreme Court as violating the Equal Protection Clause. *Id.* at 229 (citing *York v. State,* 53 Haw. 557, 558, 498 P.2d 644, 645 (Haw.1972)).

Here, although Hawaii Revised Statute 78–1 previously had durational residency requirements in its text, those requirements were removed in response to the Hawaii Supreme Court and this Court's rulings finding them unconstitutional. Plaintiffs argue that although the statute on its face does not have a durational requirement, its effect is a de facto durational requirement that places a burden on the right to travel, thus requiring a strict scrutiny analysis. Residency can be established by documentary evidence of filing State income tax returns, registering to vote in Hawaii, obtaining a Hawaii driver's

274 (1972) (applying strict scrutiny analysis and invalidating one-year residency require-

ment for voting).

license or other license, registering a motor vehicle in Hawaii, by a deed or lease, etc. Plaintiffs claim that establishing legal residency as required by the statute entails an onerous and time-consuming process since it would take weeks or months to fulfill the State's requirement. For example, Plaintiffs state that depending upon when the non-resident arrived, it could take 11 months to file a State tax return. Additionally, Plaintiffs assert it could take weeks for a motor vehicle to be shipped or purchased, or for voter registration to be verified and effective.

Plaintiffs cite *Grace v. City of Detroit,* 760 F.Supp. 646 (E.D.Mich.1991), as support for their argument that a de facto durational requirement is unconstitutional. In *Grace,* the City of Detroit had a requirement that all applicants for city service positions be residents of the city at the time of their application. *Id.* at 648. Various rules required that applicants have Detroit residency "not only at the time of application but also throughout the formulation of the eligibility list and until the time of certification and hire." *Id.* The court noted that the period of time between application and the formulation of the eligibility list ranged from two months to one year, and the time period between application and certification could be as long as three years. *Id.* at 649. Thus, the court found that "[t]he practical effect of these requirements is to impose a residency requirement of substantial duration, for the mere opportunity to compete [for a public position] and without any certainty of ultimate success." *Id.* Applying the strict scrutiny analysis, the court found the residency requirement resulted in an impermissible burden on the right to travel and enjoined the city from enforcing the requirements. *Id.* at 653; *see also Perez* 690 F.Supp. at 676 (finding that the Chicago residency requirement was an unconstitutional de facto durational requirement

since in its application it resulted in a 23–month waiting period of uncertainty).

Defendants argue that satisfying the Hawaii residency requirement is much easier and takes far less time to satisfy than the requirements set forth in the *Grace* case. Defendants state that any one of the documentary proof of residency could be sufficient to establish residency, and that establishing residency could happen almost instantaneously upon arrival in the State. Defendants use Plaintiff Wilson as an example of how easy it is to claim residency. Wilson filed an affidavit of Hawaii voter registration, and his Certificate of Voter Registration was issued within one week of his submission. Approximately sixteen days after Wilson provided the City with a copy of this Certificate, the City emailed Wilson informing him that they received his proof of residency document and reactivated his application. (DeCosta Decl. Exs. 1–2; Zukeran–Lyman Decl. Ex. 2, attached to the City's Opp'n.) Based upon Wilson's own experience, Defendants argue that the instant case is distinguishable from *Grace* since *Grace* involved various waiting periods, including one of 60–days to one year, and another period of almost three years. Thus, Defendants argue, that the statute at issue here does not impose a de facto durational requirement. The Court agrees.

Here, unlike in *Grace* or *Perez,* there has been no showing by Plaintiffs that obtaining any of the proof of residency documents takes much time at all, let alone a duration of 60–days or more. Indeed, it took only one week for Plaintiff Wilson to receive his Certification of Voter Registration and Defendants considered this one document sufficient to establish residency and therefore accept and process his application for employment. Furthermore, with the advent of the internet and email, there is nothing preventing a potential ap-

plicant from starting the residency process to establish their intent to be a Hawaii resident before he or she is physically present in Hawaii. For example, certain websites make it easy to find places to rent and enter into leases without being physically present in the State at that time. In addition, many state forms are available on the web and the applicant can at least begin to fill them out before physically moving to Hawaii. Moreover, there is nothing preventing an applicant from shipping his or her vehicle prior to being physically present in the State and then registering it upon their arrival. As any one or combination of these documents would be sufficient to meet the residency requirement, and as obtaining some the above documents can be done either prior to being physically present in Hawaii or soon after arrival, the residency requirement does not impose a de facto durational requirement.

■ As this Court finds that Hawaii Revised Statute 78–1(c) does not impose a de facto durational residency requirement, the strict scrutiny analysis does not apply. However, because the residency requirement still implicates the right to interstate travel, Defendants must prove that the requirement is rationally related to a legitimate policy goal. *Perez*, 690 F.Supp. at 674; *Martinez v. Bynum* 461 U.S. 321, 329 n. 7, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983) ("[a] bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents." "A bona fide residence requirement implicates no 'suspect' classification, and therefore is not subject to strict scrutiny.... the question is simply whether there is a rational basis for it.").

### A. *Rational Relation Test*

Under the rational relation test, Defendants must show that the residency requirement is rationally related to a legitimate policy goal. *Perez*, 690 F.Supp. at 674.

> [T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.

*Allied Stores of Ohio (Inc.) v. Bowers*, 358 U.S. 522, 527, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959) (citation and quotation omitted).

Defendants argue for the first time [2] that they have a legitimate policy goal of assuring that persons considered for governmental jobs have a commitment to the State, are loyal, and have knowledge of local problems. Defendants state that these interests are rationally related to the pre-employment residency requirement because hiring newly arrived persons results in quick turnover before the significant investment in training time of those persons has begun to yield a return. Defendants claim that this quick turnover is due to the non-residents' underestimation of the effect of Hawaii's geographic isolation or cultural differences.

Plaintiffs argue that the there is no legitimate policy for the statute because the legislative history indicates that it was adopted to deter in-migration, which is an impermissible purpose. Plaintiffs also argue that Defendants newly articulated interests of loyalty and commitment are ir-

---

**2.** In *Nehring,* when the same statute was at issue, the State argued that the purpose of Hawaii Revised Statute section 78–1 was to control growth, protect the environment, and apportion employment opportunities. 443 F.Supp. at 237, 238.

rational as the likelihood of job turnover could be attributed to any particular group, such as those under 40 years of age, yet only non-residents are barred from applying for public employment.

"The Supreme Court has repeatedly stated that 'to the extent the purpose of (such a law) is to inhibit the immigration of (people) generally, that goal is constitutionally impermissible.' " *Nehring,* 443 F.Supp. at 238 (quoting *Memorial Hosp.,* 415 U.S. at 263–64, 94 S.Ct. 1076); *Saenz,* 526 U.S. at 506, 119 S.Ct. 1518 (classifications between residents based upon length of residency may not be justified by a purpose to deter applicants from migrating to a state because "such purpose would be unequivocally impermissible.").

With respect to the instant case, this Court previously found that the State admitted that the purpose of Hawaii Revised Statute 78–1 was to achieve its goal of controlling growth by "keeping people out of Hawaii." *Nehring,* 443 F.Supp. at 238. This Court noted in *Nehring* that the statute was originally enacted "[i]n order to dissuade people from continuing to settle in Hawaii." *Id.* at 229. After the Hawaii Supreme Court struck down the statute's three-year residency requirement as unconstitutional, then Governor Ariyoshi "expressed his willingness to put this State in direct confrontation with … the Constitution of the United States. He called for bold ideas and action to combat the problem of potential overpopulation in Hawaii." *Id.* at 229. In response, the State enacted the one-year durational residency requirement. *Id.*

After the *Nehring* case struck down the one-year residency requirement for public employment as unconstitutional, Governor Ariyoshi requested that the pre-employment residency requirement be introduced as part of his "Legislative Package for Growth Management." (Perrin Decl. Ex. 6, attached to Pls.' Mot.) The standing committee reports on the pre-employment residency requirement bill followed the objectives of the "Legislative Package for Growth Management" and noted that the purposes of the pre-employment residency requirement was to encourage the hiring of local residents, control growth of the population, and protect limited resources by not encouraging in-migration. (*Id.* at Exs. 7–9.) This bill was enacted and it replaced the unconstitutional one-year durational requirement with the pre-employment residency requirement.

In addition, after *Nehring,* the State defended its pre-employment residency requirement in an amicus brief it filed in the *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) case. The State argued that

> migrant job-seekers pose problems for local residents in Alaska and Hawaii … Over-population may ultimately mean the demise of Hawaii's visitor industry … Consequently, the Legislature of the State of Hawaii, like Alaska's legislature, has also enacted restrictions on public employment requiring Hawaii residency for the vast majority of public jobs.

Briefing for State of Hawaii as Amicus Curiae, *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (No. 77–324), 1978 WL 206744, at * 3 (Jan. 31, 1978).

Plaintiffs assert that the legislative history and arguments by the State demonstrate that Hawaii Revised Statute section 78–1(c) has the impermissible purpose of deterring in-migration. The State would have this Court believe that because it removed the one-year durational requirement, the current incarnation of Hawaii Revised Statute section 78–1 is a complete transformation from the previous version of the statute. However, Defendants do not contest the original impermissible purpose of the statute, nor do they explain

how the replacement of the one-year requirement with a pre-employment residency requirement removes the taint of the original impermissible purpose.[3]

■ The history of this statute makes it clear that the State has continued to perpetuate the original improper purpose. Although the State removed the one-year durational requirement from the statute, this Court cannot ignore the original and continuing impermissible purpose of the statute— to deter in-migration by controlling growth first through a three-year durational residency requirement, then through a one-year durational requirement, and finally through a pre-employment residency requirement for public employment. *Cf. Martinez,* 461 U.S. at 333, 103 S.Ct. 1838 (upholding a residency requirement since there was no indication that the statute had any impermissible basis). This is especially true since the impermissible purpose results in the denial of the opportunity to apply for public employment, which affects the opportunity to pursue a necessity of life, especially for those who are trained for work performed primarily by the government. *Nehring,* 443 F.Supp. at 237; *Soto–Lopez,* 476 U.S. at 908, 106 S.Ct. 2317 (finding that the awarding of bonus points to veterans who were New York residents at a past fixed point was unquestionably a substantial benefit since it could "mean the difference between winning or losing civil service employment, with its attendant job security, decent pay and good benefits."); *Grace,* 760 F.Supp. at 650 (noting that "the right to compete for government employment with city residents .. is a vital benefit and privilege. Employment ... is the means of providing one's family with the necessities of life."). As stated previously by this Court, the State "can constitutionally seek to control growth through the use of zoning and other more enlightened tools of economic planning." *Nehring,* 443 F.Supp. at 238.

Furthermore, even if this legislative history demonstrating an impermissible purpose did not exist, Defendants' newly alleged legitimate interests of finding loyal, committed employees to prevent quick turnover is not rationally related to a pre-employment residency requirement. First, Defendants' argument that persons who were non-residents at the time of application are more likely to leave a position soon after their hire than those persons who were residents at the time of their application is contradicted by their argument that obtaining residency is easy and instantaneous upon arrival in the State. Indeed, other than the purchasing

3. Defendants rely heavily on dicta in the three page, per curiam decision in *McCarthy,* in which the Supreme Court stated that it has not "questioned the validity of a condition placed upon municipal employment that a person be a resident [a]t the time of his application." 424 U.S. at 646, 96 S.Ct. 1154. The quoted phrase is interpreted by Defendants as meaning that a State's imposition of a residency requirement at the time of application for municipal employment is literally beyond question, presumably, due to its obvious constitutionality. However, read in conjunction with the immediately succeeding footnote, the phrase we have not "questioned the validity of ..." is better interpreted simply as the Supreme Court explaining that it has not yet addressed this particular question. Indeed, in discussing previous rulings, the Court stated as follows: "Neither in those cases, nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident [a]t the time of his application. Nor did any of those cases involve a public agency's relationship with its own employees ...." *Id.* at 646 n. 6, 96 S.Ct. 1154. The Supreme Court is differentiating specifically between the legal questions it is ruling on, and those that it is leaving open. In the *McCarthy* case, the Supreme Court ruled on the validity of a continuing residency requirement. A pre-employment residency requirement was not at issue.

of a plane ticket and filling out a voter registration affidavit or vehicle registration form, there is no significant difference between persons who are non-residents at the time of their application and persons who obtained residency immediately upon arrival in the State. If the State's earlier argument is correct that persons can likely become residents within one day of their arrival in the State (e.g. by having already entered into a lease for rental of a home) and immediately apply for public employment, those persons are equally as likely to be unfamiliar with day-to-day life in Hawaii as the person who had not yet established residency, as they likewise have yet to actually experience living in Hawaii. Defendants' argument that residents are less likely to leave their job implies that Defendants are surreptitiously imposing a durational residency requirement by selecting long-time residents for hire over recently arrived residents, an action which is clearly unconstitutional.

Additionally, Hawaii Revised Statute section 78–1 is discriminatory on its face. Indeed, the text of statute grants exceptions to the pre-employment residency requirement for those persons applying for positions as police officers or with the University of Hawaii. Haw.Rev.Stat. § 78–1(c) and (f). Defendants do not even address this inconsistency or offer any justification for why those applying for jobs with the University of Hawaii should be treated differently from those persons applying for any other public position. Thus, Defendants' argument that section 78–1 is rationally related to its legitimate interest in preventing turnover is severely undermined by the State's exception to the pre-employment residency requirement for those seeking public positions with the University of Hawaii or as police officers. Moreover, this Court sees no reason why Defendants could not accept and review applications from non-residents and make a conditional offer of employment subject to proof of residency within a reasonable period of time of their start date. *See Andre,* 561 F.2d at 52–53 (upholding a requirement that municipal employees establish residency within a certain period of time *after* becoming employed).

Finally, the Hawaii Supreme Court has previously found that the rationale that residents better understand local issues was insufficient to support the former durational requirement of Hawaii Revised Statute 78–1 under the rational relation test, since the residency requirement had no rational connection to whether the applicant had the capacity and fitness to serve as a public employee. *York,* 53 Haw. at 561 n. 3, 498 P.2d at 647 n. 3. Also, in *Nehring,* this Court found that the State's enumerated purpose for the statute of protecting the environment was not rationally related to the classification of new and old residents. 443 F.Supp. at 238.

Accordingly, as Defendants have not established that the pre-employment residency requirement was not enacted for an improper purpose and that it is rationally related to a legitimate interest, this Court finds that Plaintiffs have a strong likelihood of success on the merits of their claim that the pre-employment residency requirement of Hawaii Revised Statute section 78–1 is unconstitutional.

This Court is deeply concerned with the law in its current form as a residency requirement that bars non-residents from applying for employment with the State or County acts as a prohibition on the fundamental right to travel and is therefore constitutionally suspect and virtually indefensible. On the other hand, a requirement that a new hire obtain state residency within a reasonable period of time after hire appears to be a responsible requirement that would meet constitutional requirements, as dictated in prior decisions.

## III. *Irreparable Harm*

Defendants first assert that Plaintiffs have not proven irreparable harm because they have not established a likelihood of success on their Constitutional claims. Defendants also argue that regardless of Plaintiffs' success on their Constitutional claims, a deprivation of Constitutional rights is insufficient to establish irreparable harm for purposes of a preliminary injunction.

Plaintiffs argue that a Constitutional violation is a *per se* basis for this Court to find irreparable injury. Additionally, Plaintiffs argue that they have a strong likelihood of success on the merits of their case, and therefore must only show a possibility of irreparable injury. Plaintiffs assert that either taken together or separately, these two propositions of law entitle them to a finding of irreparable harm sufficient to justify a preliminary injunction.

 "When a plaintiffs fundamental constitutional rights are being infringed upon, one can assume that irreparable injury exists." *Nehring*, 443 F.Supp. at 228; *see also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir.1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *Huston v. Burpo*, C94–20771, 1995 WL 73097, at *5 (N.D.Cal. Feb. 13, 1995) ("a violation of a constitutional right would constitute an irreparable injury."); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (in the context of free speech, the Supreme Court held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). In addition, where a plaintiff has established a likelihood of success on the merits, he or she need only establish the possibility of irreparable injury. *Warsoldier*, 418 F.3d at 993–94.

Here, as set forth above, this Court found that the Hawaii residency requirement very likely violates Plaintiffs' fundamental constitutional right to interstate migration. Thus, it can be presumed that irreparable injury is extremely likely.

 Even if this Court does not follow *Mitchell* in assuming that a constitutional violation automatically creates irreparable injury, as this Court found that Plaintiffs have a strong likelihood of success on the merits of their constitutional claims, they need only establish the possibility of irreparable harm. Plaintiffs have met this burden. Plaintiffs, especially Wilson, have demonstrated that they have been and continue to be deterred from completely migrating to the State since they continue to be precluded from applying for public employment. As such, Plaintiffs are being prevented from plying their trade, and receiving all the attendant benefits. Accordingly, as Plaintiffs have established the possibility of irreparable harm, this Court GRANTS Plaintiffs' motion for a preliminary injunction.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.